UNITED STATES, Appellee

v

EARL A. MILLER, Private First Class, U. S. Army, Appellant

8 USCMA 33, 23 CMR 257

No. 9153

Decided May 31, 1957

*First Lieutenant Robert J. Hearon, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Major Frank C. Stetson.*

*First Lieutenant Edward S. Nelson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Chester F. Relyea.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was tried and convicted of unpremediated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He was sentenced to be dishonorably discharged, to forfeit all pay and allowances, and to be confined at hard labor for twenty years. The convening authority approved the findings and sentence. The board of review reduced the period of confinement to fifteen years but otherwise affirmed the findings and sentence. The Acting The Judge Advocate General of the Army, under authority of Article 74(a), Uniform Code of Military Justice, 10 USC § 874, further reduced the confinement to eight years.

A hearing was granted by this Court on the following three issues:

1. Whether the evidence is sufficient to support the finding of guilty of unpremeditated murder.

2. Whether the instructions that "a person is presumed to have intended the natural and probable consequences of an act purposely done by him," and "if a person does an intentional act likely to result in death or great bodily harm, he may be presumed to have intended death or great bodily harm" were correct.

3. Whether the law officer was required to instruct on fear and/or mutual affray, in regard to the lesser included offense of voluntary manslaughter.

Two days before Easter Sunday, the accused became involved in a fight with a friend of the victim of this homicide. The victim came to the aid of his friend —the accused was apparently besting his opponent—but after a short struggle without serious casualty, all parties broke off the engagement and turned to peaceful employment. The next day the victim's friend jostled the accused and attempted to commence anew their fight. He was dissuaded from engaging accused in combat when

the latter retreated, obtained a shoe brush for use as a weapon, and decried the impending fight. The next day, Easter Sunday, the accused was passing through his barrack when the victim— who was listening to a two-guitar concert—asked the accused if he remembered him and then proceeded to assault and batter him. In the ensuing struggle the accused reached in his pocket to obtain his knife. The victim grabbed him in a "bear hug" from which the accused quickly extricated himself. He pulled out his knife and made several passes at the victim. One of these blows struck the victim in the chest and from this wound he died. The accused said that he did not intend to kill the victim but only intended to defend himself by frightening his assailant away.

I

There is no doubt that the evidence adduced at trial is sufficient to support the findings of guilty of unpremeditated murder. The death of the victim alleged was stipulated to at the trial by the accused. The death certificate, stating that the deceased had died of a knife wound, was admitted into evidence by this stipulation. The fact that the accused had stabbed the named victim was testified to by many witnesses and the accused admitted "cutting him" in an extrajudicial statement though he denied knowledge of this on examination at trial. The intent to kill or inflict great bodily harm in this case was—as is usually the case —shown by circumstantial evidence. There was evidence at the trial that the accused and his victim had engaged in a fight two days before the fatal encounter. The accused was carrying an open knife in his pocket the day of the killing, and after breaking his victim's "bear hug"—which had been applied by the victim to keep the accused from using his knife—he swung his knife

**35**

on the victim and stabbed him through the heart. Though the accused denied an intention to kill and interposed the defenses of self-defense and accidental homicide, these explanations and defenses do not alter the fact that there was sufficient evidence to support the court-martial's finding that the accused was guilty of unpremeditated murder. A court-martial could justifiably infer from the facts and circumstances enumerated above that the accused intended to kill his victim. That the accused did kill the named victim is uncontroverted in the evidence. The defenses and explanations of the accused—under the circumstances as set forth above—are questions of fact for the determination of the court-martial. Accordingly, we conclude that the evidence is sufficient as a matter of law to sustain the conviction of unpremeditated murder.

## II

In the course of his instructions, the law officer instructed that "A person is presumed to have intended the natural and probable consequences of an act purposely done by him," and "if a person does an intentional act likely to result in death or great bodily harm, he may be presumed to have intended death or great bodily harm."

As we said in the case of United States v Ball, 8 USCMA 25, 23 CMR 249, insofar as the term ██ "presumption" refers to inferences that the court-martial may draw from the facts it is properly before the triers of fact. We rejected in that case the theory expressed in the case of Alpine Forwarding Co. v Pennsylvania R. Co., 60 F2d 734, 736 (CA2d Cir) (1932), that presumptions have no effect, except as pleading devices, and held that the Manual for Courts-Martial, United States, 1951, at paragraph 138a, adopted a competing rule that allows justifiable inferences to go to the court-martial in the form of instructions. The word "presumption" by itself is not error and we must look to the four corners of the instructions to see whether or not the court-martial was adequately instructed as to the effect of the presumption given. In this case we think the following instructions allowed the court-martial full discretion to accept the presumption or reject it according to their experience:

"I have mentioned in my instructions on unpremeditated murder, an intent to kill, or an intent to inflict great bodily harm. Intent ordinarily cannot be proved by direct evidence unless, for example, the accused has been overheard to make a statement of his intent. You are advised, however, that intent may be proved by circumstantial evidence, that is, by facts and circumstances from which, according to the common experience of mankind, you may reasonably infer the existence of an intent. Thus the law presumes, and you *would be justified in inferring* that a person must have intended the natural and probable consequences of an act purposely done by him. *The weight, if any, to be given an inference of the accused's intent must of course depend upon the circumstances attending the proved facts which give rise to the inference, as well as all the other evidence in the case. It is for you to make this determination."* [Emphasis supplied.]

The above passage clearly left the final determination of the intent of the accused in the hands of the court-martial. These instructions correctly advised the court-martial members of the effect the so-called presumptions given were to have in their deliberation and there was no error.

It is further argued that presumptions dealing with the criminal intent are erroneous as conflicting with the doctrine set forth by the Supreme Court in Morissette v United States, 342 US 246, 72 S Ct 240, 96 L ed 288. In that case the Court held that intent is always a matter for the finders of fact and that any conclusive presumption would effectively eliminate intent as an ingredient of an offense. This, of course, is clearly not involved in the instant case because we are dealing not with a presumption of law but rather a presumption of fact that stands on its own probative legs, so to speak, and

36

is to be considered together with *all* the evidence. It is, of course, therefore, a rebuttable inference. The Supreme Court has stated—though we have determined that in this case it is factually otherwise—and we agree, that if the instructions when taken as a whole allow conclusive effect to be given the presumption instructed upon, the instructions are erroneous. The Supreme Court in the Morissette case, supra, also said that:

". . . A presumption which would permit but not require the jury to assume intent from *an isolated fact* would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect." [Emphasis supplied.]

In other words, if the court-martial thought it had only to find the established fact—the dangerous act—and could ignore the presumed fact—the intent—the instruction was erroneous. In the instant case the court-martial was not under any such impression. We assume that they followed their instructions. They were told that they would be justified in inferring that the accused intended the natural and probable consequences of his acts, but they were also told that the weight to be given to this presumed fact must depend on the *circumstances attending the proved facts as well as all the other evidence in the case.* Determination of intent was correctly left to the members of the court-martial. We think that the instant case is not only not in conflict with the Morissette case, supra, but is consistent with it and other cases interpreting it. Legatos v United States, 222 F2d 678, 687 (CA9th Cir) (1955); accord, Imholte v United States, 226 F2d 585 (CA8th Cir) (1955). In the Legatos case, the court said:

". . . in Bateman v United States, 9 Cir, 212 F2d 61, 69, this Court came to the conclusion that an instruction in a tax evasion case that

' "the law presumes that every man intends the natural and probable consequences of his own voluntary acts" ' was not prejudicially erroneous for the reason that, considered as a whole the trial court's instructions on intent 'correctly stated the law, were plain and understandable, and left no room for doubt in the minds of the jurors.'

"We think the same reasoning may be applied to the instant case. In the first place, directly contrary to the trial court's position in the Morissette case, here the judge instructed the jury that, 'The question whether, under the indictment, there existed an intent to defraud the government of the United States is solely a question of fact to be determined by the jury.' *The jury was also told that intent was an essential element of the crime; that it was to be determined by the jury from consideration of all the facts and circumstances in evidence. . . ."* [Emphasis supplied.]

We are not unmindful of the further distinction urged by the Government that the Morissette doctrine is not applicable in cases involving merely a general criminal intent. However, we need not go into that possible distinction as it is unnecessary to the disposition of this case. Regardless of the type of intent involved in this case, the instructions are consistent with the doctrine of the Morissette case, supra.

It is not out of order to further point out that the presumption involved in this case is not an isolated fact that would allow a conclusion which was not logically consistent with *all* the evidence. The effect of the type of presumption involved here is to give a fact situation its logical probative effect. The presumptions in the Federal cases cited above are presumptions of convenience that do not have their genesis in probative value—they are as easily explained by innocent mistake as by malicious intent. The act involved here—using a knife in a fight—has considerable probative value apart from convenience. It would be ridiculous to say that a law officer may not

assist the court-martial by instructions on relevant permissible inferences.

### III

We are also called on to decide whether or not the law officer was required *sua sponte* to instruct on fear as affecting the provocation necessary to reduce a homicide to the degree of voluntary manslaughter. The same question is also posed with regard to the theory of "mutual affray." We do not think mutual affray is involved in the instant fact situation. The deceased was beating the accused, who avers that he acted in self-defense and that he could not retreat. There is no testimony indicating that the parties involved here were having a "mutual affray." We believe that when examined as a whole the instructions in the instant case adequately deal with the question of provocation as related to voluntary manslaughter. A law officer does not have to single out and comment on every aspect of the case if the particular issues are adequately dealt with in the instructions as a whole. United States v Schick, 7 USCMA 419, 22 CMR 209. If clarification or elaboration is desired, the burden of requesting such additional instructions rests with the defense counsel. United States v Phillips, 3 USCMA 137, 11 CMR 137; United States v Felton, 2 USCMA 630, 10 CMR 128. In the instant case, a complete instruction was given with regard to voluntary manslaughter, and no request was made with regard to the specific effect of fear. In this case it was not necessary because the instructions as a whole were sufficient to guide the court-martial with regard to provocation as affecting homicide. The findings of the board of review are affirmed.

Judge LATIMER concurs in the result.

QUINN, Chief Judge (concurring in the result):

Except for the discussion in Part III, I agree with the principal opinion. As to the excepted part, I concur in the result on the ground that the question of fear was not reasonably raised. At the trial the accused strongly denied that he intended to stab the victim. He maintained that he hit the deceased with the back of his hand "to try and scare him away." He further testified that he did not know whether the deceased ran into his knife, or whether he had, in fact, "cut him." The substance of this testimony is a complete disclaimer of any fear on the part of the accused.