UNITED STATES, Appellee

v

AMBROSE T. CATES, Sergeant, U. S. Army, Appellant

9 USCMA 480, 26 CMR 260

---

No. 10,320

Decided July 25, 1958

*Claude T. Wood, Esquire,* and *Major Frank C. Stetson* argued the cause for Appellant, Accused.

*First Lieutenant Thomas M. Lofton* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Accused was tried by general court-martial for premeditated murder, and convicted of unpremeditated murder, in violation of Article 118 of the Uniform Code of Military Justice, 10 USC § 918. The facts, insofar as pertinent to this appeal, are as follows: Accused shot to death another serviceman following an altercation involving the obligation of accused's wife, a barroom waitress, to accept payment in foreign specie from the deceased. Accused executed four pretrial statements, in the fourth of which, for the first time, he admitted an intention to shoot at the deceased. During the course of trial, when the prosecution sought to lay a foundation for the introduction of these exhibits, defense counsel requested and was granted an out-of-court conference. In that conference, stating that he did

not wish the court-martial members to even know of the existence of accused's incriminatory fourth pretrial statement, defense counsel objected to its introduction into evidence. The law officer refused to rule as to its admissibility. Instead he replied that the hearing on the question of admissibility should be held in open court and after the prosecution was accorded an opportunity to lay a necessary foundation. Thereupon, the defense made a proffer of proof. Included therein was the assertion that the accused, who had enjoyed only an eighth grade education prior to entering military service, had been advised that he could not consult with counsel until after he had signed the statement in question. When it was offered in evidence in open court, the defense counsel objected to its admission upon the grounds of his prior proffer of proof. He offered no other evidence and his objection was overruled. In admitting the challenged prosecution exhibit into evidence, the law officer instructed the court:

". . . In this regard, the law recognizes that involuntary statements are often untrustworthy and unreliable. Therefore, the voluntariness of this statement, which has been contested by claims that it was obtained by compulsion, duress and coercion, constitutes a matter you should consider in determining what weight, if any, you are to give to this statement, and you should give weight to the statement only to the extent you believe it to be truthful."

Thereafter, accused voluntarily took the stand in his own behalf. He testified that after his arrest his wife had procured civilian counsel, which testimony was corroborated by the wife. He further testified he was induced to sign the incriminatory statement because of advice to him from the investigating agents that he could not consult with his counsel until he had signed. However, he also stated the only reason he executed the statement was that the same agents had told him "it would go better" with him if he did so. Testimony of the agents involved contradicted accused upon both these points. While testifying as to the shooting of the deceased,

accused's testimony evidenced considerable confusion. At one point he said, "It flashed through my mind to kill the man," and at another he stated, "I had no intention of shooting him unless it become [sic] complete [sic] necessary," and thereafter responded that it had become necessary. However, in contrary vein, accused repeatedly stated he had entertained no intention of firing at the deceased but that the shooting was an accident occasioned by a third person bumping into him.

In instructing upon premeditated murder, the law officer advised:

". . . Thus, the law presumes, and you would be justified in inferring, that a person must have intended the natural and probable consequences of any act purposely done by him. The weight, if any, to be given an inference of the accused's intent must of course depend upon the circumstances attending the proved facts which give rise to the inference, as well as all evidence in the case. It is for you to make this determination."

And instructing on unpremeditated murder, the law officer advised:

". . . A person is presumed to have intended the natural and probable consequences of an act purposely done by him. Hence, if a person does an intentional act likely to result in death or great bodily injury, he may be presumed to have intended death or great bodily harm."

We granted accused's petition for review to determine three issues which will be stated and discussed in the course of the opinion.

I

There are some decisions to the effect that the failure to hold the preliminary hearing outside the hearing of the jury is not prejudicial if the evidence is sufficient to support the trial judge's ruling admitting the pretrial statement into evidence. Tyler v United States, 193 F2d 24 (CA DC Cir) (1951); Tooisgah v United States, 137 F2d 713 (CA 10th Cir) (1943); Ramsey v United States,

33 F2d 699 (CA 8th Cir) (1929). But the later and better rule is that the duty to hold such a hearing is mandatory and the refusal to hold it when requested is reversible error. United States v Carignan, 342 US 36, 72 S Ct 97, 96 L ed 48; Wright v United States, 250 F2d 4 (CA DC Cir) (1957); Schaffer v United States, 221 F2d 17 (CA 5th Cir) (1955); Brown v United States, 228 F2d 286 (CA 5th Cir) (1955).

This Court has voiced its approval of the later rule. United States v Cooper, 2 USCMA 333, 8 CMR 133; United States v Jones, 7 USCMA 623, 23 CMR 87. See also United States v Floyd, CM 397304, decided November 29, 1957.

In United States v Dicario, 8 USCMA 353, 24 CMR 163, we said:

". . . It is, of course, possible to raise several objections to the admissibility of a confession. Some of the grounds may be presented to the law officer in an out-of-court hearing, and others may be presented to the court members. *The division may be founded upon the accused's desire to keep evidence material to the issue of voluntariness, but of possible disadvantage to him, away from the court members.*" [Emphasis supplied.]

Consequently, we are of the opinion that the law officer's refusal to accord accused the requested out-of-court hearing on the question of admissibility of his pretrial statement was prejudicial error.

## II

The second issue involves the correctness of the law officer's instruction to the effect that a person is ▇▇▇▇▇ presumed to have intended ▇▇▇▇▇ the natural and probable consequences of an act purposely done by him. The instruction as given in relation to the charge of premeditated murder is identical with that which we approved in United States v Miller, 8 USCMA 33, 23 CMR 257, although subject to the same criticism for the unnecessary use of the word "presumption," as we made in that case. However, when he instructed on unpremeditated murder, the law officer neglected, with reference to this presumption, to add the clarifying explanation found in United States v Miller, supra. Therefore, this instruction was defective. We have held that if the court has been instructed both rightly and wrongly on a material issue, the correct instruction does not cancel out the prejudicial taint of the erroneous one. United States v Noe, 7 USCMA 408, 22 CMR 198. Failure of the defense counsel to object to the instruction on unpremeditated murder did not constitute a waiver. United States v Williams, 1 USCMA 186, 2 CMR 92.

Accordingly, we find the law officer's instruction on unpremeditated murder to be prejudicially erroneous.

## III

The third issue concerns the correctness of the law officer's instruction that the court-martial might consider accused's pretrial statement to the extent it found that statement to be truthful.

If accused was prompted to sign the incriminatory pretrial statement solely because of the advice ▇▇▇▇▇ of the investigating agents that "it would go better" with him if he signed it, this evidence alone might not be sufficient to raise the issue of voluntariness. United States v Kluttz, 9 USCMA 20, 25 CMR 282. However, since accused also testified that the investigating agents advised him he would not be allowed to consult with counsel until he had signed the statement, we have no way of determining whether he was persuaded to sign by the advice "it would go better" for him if he did so, or by the belief he could not consult with counsel until he had affixed his signature to the statement. Consequently, whether we approach the problem from the view of deprivation of counsel[1] or that of an unlawful inducement alone affecting voluntariness, that question is posed. The instruction is in substance the same which we condemned in United States v Jones, and United States v Dicario,

---

[1] United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251.

both supra, and United States v Schwed, 8 USCMA 305, 24 CMR 115.

The accused's testimony was clearly not of the dignity of a judicial admission, removing all questions of doubt, and thus permitting the introduction of his incriminatory pretrial statement into evidence as was the case in United States v Trojanowski, 5 USCMA 305, 17 CMR 305.

The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result) :

I concur in the result.

Because I believe this decision is another in a series which have tended to weaken the authority of a law officer, I prefer to first develop my views in some detail on that facet of the controversy. After having been warned fully of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, the accused executed four pretrial statements. Relying on the principle that the Government must affirmatively establish the voluntariness of a confession before it can be introduced in evidence, trial counsel started to lay an evidentiary foundation to meet the requirement of the rule. During the course of the examination of a Government witness testifying for that purpose, defense counsel requested an out-of-court hearing. The law officer granted the request and, after the court-martial retired, defense counsel stated that his purpose in having the court excused was to keep from the members such evidence as would be presented upon his objection to the admissibility of the fourth and last statement executed by the accused. There was no like objection to the admission of the first three statements. Defense counsel also insisted he was entitled to obtain a ruling by the law officer on a motion to suppress the confession out of the hearing of the court. By this strategy he hoped to prevent the members from learning about the existence of the last statement.

If it is permissible for the law officer, upon request of the accused, to silence the Government—which I doubt—that procedure is assuredly not one which the law officer must permit under penalty of reversal. In a colloquy with defense counsel, the law officer advanced the theory that the Government could present its evidence in open court and that, while defense evidence could be presented out of court, his final ruling on any objection lodged by defense objection must be announced in open court. This procedure was unsatisfactory to the defense, for it was defense counsel's contention that a ruling before the court members would defeat his purpose in calling an out-of-court conference. When the law officer refused to retreat from his position, defense counsel made an offer of proof which, for the purpose of argument, I will assume tended to show the disputed statement was not voluntarily given. When court reconvened, trial counsel produced evidence refuting each allegation of that offer of proof and tending to establish that the statement was voluntarily given. Prior to admitting the document, the law officer explained to the accused his rights to take the stand for the limited purpose of testifying on the alleged involuntariness of his confession. The accused elected to remain silent; however, his counsel reiterated his offer of proof in support of his objection to its admission.

While under certain circumstances it may be a better practice to permit an accused to make his showing on voluntariness outside the presence of the court, it is not mandatory and normally would just be a duplication of effort. Paragraph 57g(2) of the Manual for Courts-Martial, United States, 1951, insofar as applicable in this instance, provides:

"Except with respect to hearing arguments of counsel on proposed additional instructions (73c(2)), there is no requirement in courts-martial that the law officer conduct any hearings out of the presence of the members of the court. However, if it appears to the law officer that an offer of proof (154c), or

484

preliminary evidence or argument with respect to the admissibility of proffered evidence, may contain matter prejudicial to the rights of the accused or the Government, he may, upon his own motion or upon motion of counsel, direct that the members of the court be excluded during the presentation of such offer of proof, preliminary evidence, or argument. Counsel for both sides, the accused, and the reporter will be present during such proceedings which, if they include the presentation of preliminary evidence, will be fully recorded, transcribed, and appended to the record of trial for the information of the convening authority."

In United States v Cooper, 2 USCMA 333, 8 CMR 133, we said the accused had the right to have appropriate evidence received by the law officer outside the presence and hearing of the court for the purpose of enabling that functionary to make a preliminary determination of the question of admissibility. But the right is not absolute and unless it can be shown that a law officer abused his discretion in denying such a hearing, accused cannot complain. Moreover, in this instance that right was not denied this accused and the law officer specifically informed the defense it could present evidence at that time. Defense understood that, but it sought more. The entire thrust of its argument was that the law officer must rule in closed session; otherwise, the court-martial might learn of the confession. This is contrary to the provisions of the Manual which state unequivocally that all rulings will be in open court. Paragraph 39c, Manual for Courts-Martial, United States, 1951. While an accused may be entitled to some degree of secrecy to prevent unfair testimony reaching the court-martial, he cannot, contrary to military law, bar the law officer from recording his ruling in open court. In addition, it must be remembered that the purpose of such a hearing in camera is to hold a preliminary inquiry into the question of voluntariness and if the law officer ultimately rules that the statement is admissible, the court-martial must of necessity be told of the ruling and hear the same testimony pro and so much of that which is contra as the defense desires to adduce; see United States v Dicario, 8 USCMA 353, 24 CMR 163; for then the members are authorized to consider the identical question, United States v Jones, 7 USCMA 623, 23 CMR 87; and they must know the facts. In this particular instance, the accused abandoned any issue over the admissibility of his confession due to involuntariness when he chose not to present evidence upon that issue at any time before its reception into evidence by the law officer. While it can be said that technically the law officer could have ruled in the out-of-court conference and then again ruled after the court opened, I fail to see that he erred by stating he would make only one ruling. Certainly, in the circumstances of this case, no one could reasonably say the law officer abused his discretion in demanding that his ruling be made in open court. I, therefore, disagree with the Court's holding that he erred to the prejudice of the accused.

The law officer's erroneous instruction on the confession to the court members presents another and substantially different matter. As mentioned, after the Government produced its evidence on the voluntariness of the confession, the accused elected not to testify. Had the matter ended there, the law officer could not have committed reversible error in so instructing the court; but the accused did testify on the merits after the law officer had ruled the confession admissible. During the course of his examination and cross-examination, the accused claimed that the confession had been obtained from him only after a prolonged questioning period and that his interrogators had refused his requests to consult with his own civilian counsel before executing it, as well as several other matters of inducement, claims which were contradicted by his two interrogators. The accused's showing of lack of free will was rather weak in view of the admitted fact that he was frequently advised of and understood his rights under Article 31, supra. Sometimes, however, a subjective standard may be

485

warranted for voluntariness; see, e.g., Haley v Ohio, 332 US 596, 92 L ed 224, 68 S Ct 302 (1948). This accused appears to have a low intelligence level, and to have been slow-witted and impressionable, which attributes may place him in a class with those whose mental freedom is easily impaired. Under such circumstances, I believe he raised an issue over voluntariness for the court's determination.

The accused denied the truthfulness of the incriminatory part of the questioned statement and, accordingly, there is prejudice unless the Government's contention that he judicially admitted the same facts and circumstances while on the witness stand is sound. That assertion, however, must fail for the simple reason that the accused's trial testimony vacillated between facts showing an accidental discharge of the weapon and an intentional shooting in self-defense. The confession fixed with certainty an intentional shooting, thus rendering the accidental version unlikely. I cannot find, therefore, that the submission of contents of the confession to the court members, without a proper instruction that they could reject them entirely if they determined the confession was involuntary, was harmless.

As to the instruction by the law officer that:

". . . A person is presumed to have intended the natural and probable consequences of an act purposely done by him. Hence, if a person does an intentional act likely to result in death or great bodily injury, he may be presumed to have intended death or great bodily harm,"

I think United States v Miller, 8 USCMA 33, 23 CMR 257, is dispositive. This portion of the law officer's instruction was concerned with the elements of unpremeditated murder and was almost immediately preceded by this instruction upon the elements of premeditated murder:

". . . Thus, the law presumes, and you would be justified in inferring, that a person must have intended the natural and probable consequences of any act purposely done by him. The weight, if any, to be given an inference of the accused's intent must of course depend upon the circumstances attending the proved facts which give rise to the inference, as well as all evidence in the case. It is for you to make this determination,"

which certainly satisfied the requirements of United States v Miller, supra. I would hold the more detailed instruction upon the greater offense to have adequately informed the court members that the presumption, that a person intends to effect the natural and probable consequences of acts purposely done by him, meant only that they would be justified in drawing that inference. Defense counsel, when asked, had no objection to the instructions as given by the law officer and did not request a redefinition of the term "presumption." This was undoubtedly because it was reasonable to expect the court members to apply the term as it was previously defined when they were again advised to consider it in the same context. It is also reasonable to put the burden upon the defense of acquainting the law officer with its desire for the repetition of a definition once announced before the latter is held responsible for the lack of it.