UNITED STATES, Appellee

v

ALLEN W. HOUGHTON, III, Technical Sergeant,
U. S. Air Force, Appellant

13 USCMA 3, 32 CMR 3

*Captain Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph E. Krysakowski* and *Colonel Daniel E. Henderson, Jr.*

*Major James Taylor, Jr.*, argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

## Opinion of the Court

QUINN, Chief Judge:

Marcella Houghton, twenty-two months of age, was killed by her father. He was tried and convicted on a charge of unpremeditated murder and sentenced to dishonorable discharge, confinement at hard labor for twenty-five years, and auxiliary penalties. A board of review affirmed the conviction, but reduced the period of confinement to twenty years. The accused contends his conviction should be reversed because of two alleged prejudicial errors in the law officer's instructions.

The first assignment of error is concerned with the following instruction by the law officer:

"You are advised as a matter of law that an accused is criminally responsible for homicide if his unlawful act contributed to or accelerated the death of the victim."

The accused contends "no issue was raised to warrant any such instruction." To put the assignment of error in proper perspective, we set out briefly some of the evidence and the proceedings at trial. At about 4:00 a. m., on August 14, 1960, Mrs. Houghton appeared at the apartment of her upstairs neighbors, Sergeant and Mrs. Kirkland. She was carrying the battered body of Marcella. Both the sergeant and his wife tried to find a pulse beat in the child, but could not. The sergeant directed his spouse to call an ambulance and began mouth to mouth artificial respiration. When the ambulance failed to appear, Sergeant Kirkland had his wife drive Mrs. Houghton, the child, and himself to the hospital. En route, he continued the artificial respiration procedure, but on their arrival at the hospital the child was pronounced dead.

In a pretrial statement, the accused admitted he struck the child on the back with a belt; and that during dinner on the evening before her demise, he kicked her in the back with sufficient force to propel her about three feet from him, and to cause her to fall on the concrete tile floor of the apartment in which they lived. However, the child's body bore a great many bruises on the front and back which several doctors testified were traumatic in nature and of about the same "age." The appearance of the injuries as revealed by photographs in evidence cannot properly be described in words. There was an "extensive" bruise or wound on the left check; there was loose skin around the left ear, on the chest, and on several places on the back; there were great bruises on the arms and legs; there was a large bruise or wound on the right cheek and another on the right forehead. An autopsy indicated death resulted from cerebral hematoma, or blood clot, secondary to hematoma of the forehead. By hypothetical questions addressed to medical witnesses for the prosecution, defense counsel elicited testimony to the effect that the bruise on the forehead could have been caused by a fall from the bed to the floor. In his closing argu-

**4**

ment to the court-martial, defense counsel proposed a hypothesis "more reasonable than any hypothesis of guilt." He postulated that the accused kicked the child about 9:00 o'clock in the evening; that the accused then went to work and the child was, thereafter, put to bed by her mother; later she fell out of bed "several times" hitting her head on each occasion. "Is it not reasonable," he asked, "that the fall from the bed actually caused the subdural hematoma?"

Apparently, the defense hypothetical questions and hypothesis were predicated upon a comment in the accused's pretrial statement. He said that while at work he received a telephone call and was asked to go to the hospital. He went there. He found his wife; she was sobbing. Asked what was wrong, she replied that Marcella "wouldn't stop crying when I put her in her crib so I'd put her back and she'd fall on the floor I don't know how many times." In the statement, the accused also said that before he left for work he saw "bumps" on the child's head which his wife attempted "to reduce with cold packs"; there were other bruises on both sides of the child's face; on her back, in the area where he had kicked her, was "a mark"; and there were "other bruise spots on her body." There was no explanation in the statement as to how the child acquired the injuries other than the kick "mark." Finally, the accused said that when he saw Marcella's body, he asked Dr. Akers, the medical officer of the day, "what the two raw places on her chest were." The question implies these injuries were not on the child's body when the accused saw her before he left the apartment.

In an out-of-court hearing defense counsel requested the law officer to instruct the court-martial that it must be satisfied beyond a reasonable doubt that the accused's acts were "the *sole* proximate cause of the subdural hematoma which eventually led to the victim's death." (Emphasis supplied.) The law officer denied the request and gave, instead, the contributory cause instruction set out at the beginning of the opinion.

Criminal responsibility for a homi-cide exists only if the accused's act directly causes death or contributes to death. United States v Schreiber, 5 USCMA 602, 607, 18 CMR 226; 40 CJS, Homicide, § 11d, pages 855, 856. When the act charged is a contributing cause of death it may, in point of time, either precede the infliction of other injuries or come after them. 40 CJS, Homicide, § 9e(3), page 850; Hicks v State, 213 Ind 277, 11 NE 2d 171, cert den 304 US 564, 82 L ed 1531. Consequently, as a general statement of the rule of criminal liability for a homicide the instruction in issue is correct. It called specific attention to the fact that the accused could be convicted *only* if his acts contributed beyond a reasonable doubt to Marcella's death. The instruction came after instructions on the elements of the offense charged and those of the lesser included offenses in which the law officer spelled out liability on the basis of death resulting directly from the accused's acts. Thus, the challenged instruction merely presented the second basis for liability to complete the statement of the general rule. However, the accused contends there is no evidence to support liability on the theory the accused's acts contributed to, rather than directly caused, death; and, as a result, the court-martial might have based its finding on "a theory not presented by the evidence." If there was no evidence of any injuries but those inflicted by the accused, it would hardly seem likely that the court-martial would be misled by the instruction to the accused's prejudice. United States v Jenkins, 1 USCMA 329, 3 CMR 63. Be that as it may, in his pretrial statement the accused very specifically contended that the child suffered serious injuries which were not caused by him. The board of review noted that both the defense and the prosecution accepted as competent evidence the wife's hearsay statement that the child fell out of her crib "many times." Whether the defense use of this statement at trial justifies appellate consideration of it for the purpose of determining whether the instruction was proper, need not detain us. There is a great deal of other evidence of injuries to support the appropriateness of the instruction. Two sep-

**5**

arate remarks in the accused's pretrial statement show the presence of other injuries for which the accused at least inferentially denied responsibility. In the first, he said that before he left the apartment for work he noticed bruises on both sides of the child's face and bumps on her head which his wife attempted to reduce with cold packs. His silence as to how Marcella sustained these injuries implies, in the context of his statement, that he did not inflict them. The second comment is the reference to the two "raw places" (actually areas of torn skin) on the child's chest when he viewed her body in the hospital emergency room. Here again, the statement leaves the inference that the accused had nothing to do with this injury. These statements and defense counsel's closing argument hypothesis provide ample justification for the law officer's contributing cause of homicide instruction.

Obliquely, appellate defense counsel attack the "phraseology" of the instruction. They contend that ■ even if appropriate, the words, "as a matter of law," took from the court-martial the factual question whether the acts charged to the accused contributed to the child's death. The contention reads too much into the passage and gives too little attention to other parts of the instructions. The court-martial was not told the accused was responsible because his act contributed as a matter of law to the child's death. They were merely advised that *if* his acts contributed to her death, *then* he was liable. Whether the accused's actions did in fact contribute to Marcella's death was left entirely to the court-martial. The degree of proof required to establish guilt was spelled out in meticulous detail. We conclude, therefore, there is no error in this instruction.

Turning to another part of the instructions, the accused contends he was prejudiced by the following advice:

"The court is further advised that the killing of a human being is unlawful when done without justification or excuse. A person is presumed to have intended the natural and probable consequences of an act purposely done by him. Hence, if a person does an intentional act likely to result in death or great bodily harm, he may be presumed to have intended death or great bodily harm."

In United States v Ball, 8 USCMA 25, 30, 23 CMR 249, we noted that the word "presumption" is "the slip- ■ periest member of the family of legal terms." It may be understood as indicating merely a "justifiable inference" or as describing a "presumption [or rule]" of law. The particular sense in which the word is used often depends upon a reading of the entire passage in which it is used. To say that "a person is presumed to have intended the natural and probable consequences of an act purposely done by him" ordinarily indicates only that it may be inferred he intended the consequences of his act. See United States v Jones, 10 USCMA 122, 126, 27 CMR 196; United States v Miller, 8 USCMA 33, 37, 38, 23 CMR 257; Rosenbloom v United States, 259 F2d 500, 503, 504 (CA 8th Cir) (1958). There may perhaps be occasions when the quoted words are misleading. This is not one of them. In the *Ball* case, supra, we said: "The word 'presumption' by itself is not enough to render an instruction erroneous"; if the court-martial is given "adequate tools to apply the instructions on presumptions correctly, there is no error." The challenged instruction is not the only one on the subject. In addition, the law officer advised the court-martial as follows:

"Intent ordinarily cannot be proved by direct evidence unless, for example, the accused has been overheard to make a statement of his intent. You are advised, however, that intent may be proved by circumstantial evidence, that is, by facts and circumstances from which, alone or in connection with other facts, you may, according to the common experience of mankind, reasonably infer the existence of an intent. Thus, you might be justified in inferring that a person must have intended the natural and probable consequence of any act purposely done by him. The weight, if

any, to be given an inference of the accused's intent must of course depend upon the circumstances attending the proved facts which give rise to the inference, as well as all the other evidence in the case. It is for you to make the final determination."

The test of the correctness of the instructions is not, in the words of Government counsel, "sequence but substance." We must look to the "four corners of the instructions." United States v Miller, supra. Here, the two instructions together "rendered impossible any harmful conclusion" that could be drawn by use of the word "presumed." United States v Ball, supra; United States v Miller, supra.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

I am unable to agree with the judgment of my brothers that the law officer's instructions in this case were not prejudicially erroneous. To the contrary, I would conclude that his advice with respect to the causal relation between accused's acts and the victim's death was grossly misleading and that his instruction on presumed intent effectively removed the issue regarding accused's state of mind from the hands of the fact finders.

The situation before us is not complex. The accused was found guilty of unpremeditated murder, in violation of Uniform Code of Military Justice, Article 118, 10 USC § 918. He now stands sentenced to dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade, and confinement at hard labor for twenty years. We granted accused's petition for review on two assignments of error involving the law officer's instructions.

The record discloses that the accused's young daughter died as a result of a subdural hematoma or bruising injury to the brain. According to the evidence presented to the court-martial, the fatal wound was caused either by a kick of the accused which propelled her to a tile floor or by unrelated falls from her bed after the accused had departed for work. At the conclusion of the trial, defense counsel sought an instruction that the court members must find, beyond a reasonable doubt, that accused's acts were the "sole proximate cause" of the child's death. However, the law officer refused so to advise the court-martial and, at the instance of the prosecution, instructed the members that: "You are advised as a matter of law that an accused is criminally responsible for homicide if his unlawful act contributed to or accelerated the death of the victim."

In my opinion, this instruction so incompletely and misleadingly presented the question of causation to the court members that it prejudiced the accused. True it is that the advice is based upon our holding in United States v Schreiber, 5 USCMA 602, 18 CMR 226. There, however, we dealt with the legal sufficiency of the evidence to establish that the victim died from a gunshot wound rather than from a severe beating. In concluding that the gunshot wound caused the victim's demise, we said, "at the very least, . . . the shooting contributed to the ultimate result." United States v Schreiber, supra, at page 607. Such is a far cry from the use of that language without amplification as an instruction on causation.

The purpose of instructions is to submit the theories of both sides, based on the evidence adduced, to the court members for their resolution of the factual questions in accordance with the law. United States v Black, 12 USCMA 571, 31 CMR 157; United States v Acfalle, 12 USCMA 465, 470, 31 CMR 51, 56; United States v Simmons, 1 USCMA 691, 5 CMR 119. To entitle either side to special instructions, there need be only some evidence from which the jury can reasonably infer the actual existence of the postulated facts. United States v Black, supra; United States v Moore, 12 USCMA 696, 31 CMR 282. Here, as my brothers have pointed out, there was evidence in the record from which the court members could conclude that the victim met her death by falling from bed rather than from accused's kicking. Defense counsel sought to em-

body this theory in the law officer's instructions through his request that the court be advised accused's acts must be found to have been the "sole proximate cause" of death. The requested instruction was partially inaccurate, but it served to put the law officer on notice that proper advice on causation was required. United States v Burden, 2 USCMA 547, 10 CMR 45; United States v Phillips, 3 USCMA 137, 11 CMR 137; United States v Desroe, 6 USCMA 681, 21 CMR 3; United States v Walker, 7 USCMA 669, 23 CMR 133. And that duty was not satisfied by reference to an accused's act "contributing" to or "accelerating death," for such, under the circumstances of this case, permitted the jury to convict Houghton upon a mere finding of contribution without respect to whether his behavior was a *material* factor in the child's death or whether the later, unconnected fall constituted a superseding cause. Such, of course, is not the law.

It is well settled that an accused is responsible for a homicide only if his act proximately caused the victim's death. It need not be the sole cause, but a contributing cause is deemed proximate only if it plays a material role in the victim's decease. And it is not the proximate cause if some other force independent of the wound inflicted by the accused intervenes. See, generally, Warren on Homicide, Perm ed, § 59.

The proper principle which should have been the basis of the law officer's instruction is succinctly stated in 26 Am Jur, Homicide, § 50:

". . . To warrant a conviction for homicide, the death must be the natural and probable consequence of the [accused's] unlawful act, and not the result of an independent intervening cause in which the accused does not participate, and which he cannot foresee. If it appears that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such

supervening cause is a good defense to the charge of homicide."

That the situation before us involves consideration of the doctrine of supervening cause is borne out by the decided cases. In Betts v State, 57 Tex Crim 389, 124 SW 424 (1909), the accused was tried for the killing of his young daughter. Two physicians testified that her death resulted from a blow on the head with a hairbrush wielded by the defendant. There was also evidence the defendant was absent at work when the victim died and that she had fallen from her bed. Upon these facts, so similar to those now before us, the court said, at page 425:

"Upon another trial the court should also charge the jury affirmatively that, if the child came to its death by falling out of the bed and striking its head upon the floor, and we would say, in a general way, further, to charge the jury that if the blow was inflicted upon the head, or such injury caused, by other means than at the hands of appellant, they should acquit, if they should find that the child came to its death by reason of such blow or hurt."

And in Monson v State, 63 SW 647 (Texas) (1901), the evidence indicated that the intoxicated deceased, during an altercation, was struck on the head with a "six-shooter." En route from the scene, he also fell from his buggy. On the following day, he died of head injuries. *Inter alia*, the court remarked, at page 650:

". . . Another theory was presented by the evidence, ignored by the charge, upon which requested instructions were refused, in which it was sought to be brought to the attention of the jury that if death was produced by the fall from the buggy, or if there was a reasonable doubt of this, then appellant was entitled to an acquittal. The jury should have been so instructed."

These decisions make it apparent that the law officer, on notice from the defense request for an instruction on proximate cause, should have framed advice to the court members which informed them of the principles they were

to apply in weighing the evidence regarding accused's acts and the unrelated and independent falls from bed. The instruction which he actually gave was misleading, for it permitted conviction without regard to the effect of the falls. Yet, as was said by the Supreme Court of Georgia, in Walker v State, 116 Ga 537, 42 SE 787 (1902), at page 790:

". . . The converse of this proposition must be true; that is, if the person inflicting such wound in fact shows that it did not cause the death, —as, for instance, by showing that death actually occurred in consequence of a wound inflicted by another,—he meets this burden, and cannot be convicted."

See also State v Angelina, 73 W Va 146, 80 SE 141 (1913) (improper to instruct the jury that accused might be convicted if his act contributed mediately or immediately to death of the victim, even though they believe the victim would have died from other causes or would not have died from defendant's shot alone), and Wilson v State, 190 Ga 824, 10 SE2d 861 (1940) (injury must be the sole proximate cause; or directly and materially contribute to happening of subsequent immediate cause; or materially accelerate death proximately occasioned by pre-existent cause).

Based upon the foregoing authorities, I cannot join with my brothers in their conclusion that the advice to the court members was sufficient to furnish them with adequate guideposts concerning the causative relationship between accused's acts and the victim's death. As I think the military jury was left to predicate guilt on some vague notion that accused's beating in any event contributed to the child's ultimate death, I would order a rehearing. Betts v State, supra; Monson v State, supra; State v Angelina, supra.

Turning to the second issue, I also find myself in disagreement with the majority's conclusion that the law officer's advice regarding presumed intent was not prejudicial. As I understand their position, the initial instruction was purged of harm by the law officer's subsequent elucidation on the inference of intent from circumstantial evidence.

The weakness which I perceive in their reasoning lies simply in the fact that the two instructions—one erroneous and one proper—were separated by six pages of instructions on unrelated matters, and there was no connective language between them.

As does the Chief Judge, I commence my examination of this issue by reference to our opinion in United States v Ball, 8 USCMA 25, 23 CMR 249. There, we dealt with an instruction that possession of recently stolen property " 'raises a presumption that . . . [the accused] stole it.' " Immediately after such advice, however, the law officer called the court members' attention to " 'an explanation of the term "presumption," as used in that statement of the law' " and defined it as meaning that " ' "justifiable inference" . . .' " Accordingly, we concluded at page 32:

". . . The clear exposition of the correct use of the term by the law officer we feel overcame any prejudicial effect that this particular erroneous phrase had on the court-martial."

Our next consideration of the terms "presumption" and "presumed" involved an instruction identical to that in question here. In United States v Miller, 8 USCMA 33, 23 CMR 257, the law officer advised the members of the court that " 'a person is presumed to have intended the natural and probable consequences of an act purposely done by him,' and 'if a person does an intentional act likely to result in death or great bodily harm, he may be presumed to have intended death or great bodily harm.' " Again, however, as in the Ball case, supra, we found that the law officer specifically referred to the presumption of intent as meaning no more than a justifiable inference. We accordingly found no prejudicial error, and said, at page 37:

". . . In other words, if the court-martial thought it had only to find the established fact—the dangerous act— and could ignore the presumed fact— the intent—the instruction was erroneous. In the instant case the court-martial was not under any such impression. We assume that they followed their instructions. They were

**9**

told that they would be justified in inferring that the accused intended the natural and probable consequences of his acts, but they were also told that the weight to be given to this presumed fact must depend on the *circumstances attending the proved facts as well as all the other evidence in the case.* Determination of intent was correctly left to the members of the court-martial."

In like manner, we concluded that the presumption of intent was adequately explained by the law officer in United States v Kentucky, 8 USCMA 553, 25 CMR 57. Our concern with the instruction did not, however, end with that case, for we were again faced with the problem in United States v Cates, 9 USCMA 480, 26 CMR 260. In reversing, we said, at page 483:

". . . The instruction as given in relation to the charge of premeditated murder is identical with that which we approved in United States v Miller, 8 USCMA 33, 23 CMR 257, although subject to the same criticism for the unnecessary use of the word 'presumption,' as we made in that case. However, when he instructed on unpremeditated murder, the law officer neglected, with reference to this presumption, to add the clarifying explanation found in United States v Miller, supra. Therefore, this instruction was defective. We have held that if the court has been instructed both rightly and wrongly on a material issue, the correct instruction does not cancel out the prejudicial taint of the erroneous one. United States v Noe, 7 USCMA 408, 22 CMR 198. Failure of the defense counsel to object to the instruction on unpremeditated murder did not constitute a waiver. United States v Williams, 1 USCMA 186, 2 CMR 92.

"Accordingly, we find the law officer's instruction on unpremeditated murder to be prejudicially erroneous."

In his concurring opinion, Judge Latimer noted that, elsewhere in the law officer's advice, there was an instruction on the inferences to be drawn from the doing of a purposeful act.

It seems to me that the essence of our holdings in this area is that, while use of the term "presumption" is not *per se* prejudicial, an instruction to the effect that an accused must be presumed to have intended the natural and probable consequences of an act purposely done by him is reversible error, unless it is made clear to the fact finders that this principle means nothing more than that the jury, upon proof of the intentional act, may choose, as it sees fit, to infer the necessary intent. In the case before us, it does not appear that the presumption of intent was so explained. The two instructions were, as noted above, separated by several pages of other advice. The law officer made no attempt to connect the two principles as was done in United States v Miller, supra, nor did he define the meaning of the terms employed as occurred in United States v Ball, supra. In short, the situation before us is precisely the same as that which we held prejudicial in United States v Cates, supra, a decision which the principal opinion inexplicably omits from consideration.

Moreover, it should be apparent that I disagree with the assertion that an instruction such as was given here "ordinarily indicates only that it may be inferred he [the accused] intended the consequences of his act," if such be intended to convey the thought that the members of a court-martial would so consider the definition of the terms "presumption" and "presumed." That concept is entirely at odds with the sweep of our opinions from United States v Ball, supra, through the *Cates* case, and our decision in United States v Jones, 10 USCMA 122, 27 CMR 196, offers no basis for such a conclusion. In that case, we did no more than to point out, in considering the sufficiency of the evidence, the existence of the presumption as a legal device for determining whether there was proof of accused's intent.

For the foregoing reasons, therefore, I would conclude that the law officer's advice with respect to presumption of intent was prejudicially erroneous. At the most, the court members were given two separate, unrelated instructions, one of which embodied a correct iteration of

the law and the other an erroneous principle. As we have no way of determining which concept was applied, reversal should follow. United States v Cates, supra; United States v Noe, 7 USCMA 408, 22 CMR 198. As it does not, I believe we again darken the already turbid waters of military law by another departure from well-established precedents.

I would reverse the decision of the board of review and order a rehearing.