UNITED STATES, Appellee

v

NATHANIEL SMITH, Yoeman Third Class,
U. S. Navy, Appellant

14 USCMA 405, 34 CMR 185

No. 17,122

March 6, 1964

*Lieutenant (jg) Patrick W. Lee,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel John L. Ostby,* USMC.

*Major Daniel F. McConnell,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

Accused was tried and convicted by a general court-martial of wrongful cohabitation, presenting a false claim and two specifications of signing false official statements, in violation of Articles 134, 132 and 107, Uniform Code of Military Justice, 10 USC §§ 934, 932 and 907, respectively. He was sentenced to a bad-conduct discharge, total forfeitures, six months' confinement at hard labor and reduction to the lowest enlisted grade. The convening authority and the board of review approved the findings and sentence, but the convening authority suspended the bad-conduct discharge for the period of confinement and six months thereafter with provision for automatic remission.

We granted accused's petition for review to consider whether the law officer's instructions on wrongful co-

habitation were erroneous and whether the evidence as to the charge of presenting a false claim was legally sufficient.

Accused's cohabitation with Mary Margaret Taylor, during the period alleged, is reflected in the record of trial through the testimony of witnesses and in a pretrial statement of the accused. The witnesses, who visited in the accused's apartment, *assumed* that accused and Miss Taylor were married and one recalled that on at least one occasion the accused referred to Mary as his wife. Another testified that the accused and Mary spent a night in his apartment and occupied the spare bedroom together.

In his pretrial statement the accused acknowledged that he was married to one Lovie M. Short on May 26, 1955, at Indianola, Mississippi, and that they have never been divorced. There is one issue from this marriage, a son. The last time he heard from her, in April 1962, she was residing in Memphis, Tennessee. He has written to her twice since that time but has failed to receive a reply. When he was transferred overseas, his wife and child remained in the United States.

Accused initially established a liaison with Miss Taylor in November 1960. On two occasions when he tried to break off this relationship she attempted suicide; once by ingesting an overdose of sleeping pills and the second time by shooting herself in the shoulder. It was because of this latter incident that accused obtained emergency leave to return to the United States in an effort to resolve this problem. Because he was still in love with Miss Taylor and to prevent another suicide attempt, it was decided that Miss Taylor would join the accused in Naples, Italy, which she did on June 17, 1962. Since that time they have resided together as man and wife in Naples. Further, according to accused's statement, "Miss Taylor and I have never married."

In addition, the Government presented in evidence a certified copy, properly attested and sealed, of the marriage certificate reflecting accused's marriage to Lovie Mae Short as indicated above.

In his instructions to the court members on this offense, the law officer, in addition to setting forth the elements thereof, advised as follows:

"In a prosecution for wrongful cohabitation, the Government having established such cohabitation between a man and a woman, if you are satisfied beyond a reasonable doubt that this has been established, need not, in order for you to consider the evidence and have the question of guilt or innocence submitted to you, present independent evidence of the non-marriage of the parties. Thus, where such cohabitation has been established, and the defense fails to offer any evidence that the parties were lawfully married, such failure to come forward with any evidence tending to show the innocent character of the relationship may raise a justifiable inference that the parties were not married. Whether or not to draw such an inference is permissive and not mandatory and may be accepted or rejected as the court deems fit."

The defense contends that this instruction lifted from the Government the burden of proving the illegality of this relationship and permitted an inference of illegality by proof of the act alone. The Government counters by arguing that there is nothing unreasonable in placing upon an accused the responsibility of showing a fact peculiarly within his knowledge; that the complained-of instruction clearly informed the court that the inference was permissive and not mandatory; and that there was a clearly shown predicate for the permissible inference in the accused's prior marriage to Lovie M. Short.

In 53 CJS, Lewdness, § 5, page 11, we find that:

"The general rules pertaining to presumptions and burden of proof in criminal cases apply in prosecutions for lewdness. In accordance with such law the burden is on the prosecution to prove every essential element of the crime charged, and on

**407**

accused to adduce evidence of his matters of defense. Thus it is incumbent on those accused to prove the marriage of the parties to each other as a matter of defense, since it is a matter that is peculiarly within their knowledge, and is not on the prosecution to prove that they were not married." [State v McDuffie, 107 NC 885, 12 SE 83 (1890); People v Colton, 2 Utah 457; State v Naylor, 68 Ore 139, 136 Pac 889 (1913).]

Similarly in 37 CJS, Fornication, § 6, page 123:

"In the absence of proof of marriage it is generally presumed that the parties are single and unmarried, and the burden is on them to rebut that presumption." [Territory v Jasper, 7 Mont 1, 14 Pac 647 (1887); Datka v State, 266 Wis 124, 62 NW 2d 420, 421 (1954).]

See also 2 Am Jur 2d, Adultery, § 27, page 977, negativing relation of husband and wife; and Annotation: Illicit cohabitation as a nuisance or criminal offense, LRA 1916C 653, at page 664, and cases cited therein.

In State v Blackley, 138 NC 620, 50 SE 310, 311 (1905), the Supreme Court of North Carolina held that:

". . . When the status of defendant, as being under a given age or married, by the terms of the statute, would withdraw the defendant from responsibility, while the indictment must negative such status, the status is a defense in the nature of a confession and avoidance, which must be shown by the defendant. State v McDuffie, supra. The state is not called upon to prove negative averments of this nature. Cook v Guirkin, 119 NC 17, 25 SE 715."

And in State v Naylor, 68 Ore 139, 136 Pac 889, 891 (1913), where the defendant was convicted of lewd and lascivious cohabitation, the court said:

"It is also urged that it was necessary for the state to prove that defendant and Miss Traver were not married, but such is not the law in

cases of this character. McClain, Crim Law, § 1132; State v McDuffie, 107 NC 885, 12 SE 83; US v Higgersen (CC) 46 Fed 751; People v Colton, 2 Utah, 457."

The case most relied upon for decisions in this area is State v McDuffie, 107 NC 885, 12 SE 83 (1890), where the accused were convicted of fornication and adultery. The defendants (both were tried) introduced no evidence but asked the court to instruct the jury:

". . . (2) that the burden is upon the state to satisfy the jury beyond a reasonable doubt that the defendants were not married, and, if the state has failed to satisfy the jury beyond a reasonable doubt upon this point, the jury should return a verdict of not guilty."

The court refused to give this instruction but instead charged the jury that:

". . . the burden of proving defendants not married was not on the state, but, being a matter peculiarly within the knowledge of defendants, it devolved upon them to show that they were married."[1]

In considering the defendants' allegation that this charge was error, the Supreme Court of North Carolina said:

". . . We concur with his honor in the instruction given in lieu of the second prayer for instruction. Whether defendants were married or not was a matter peculiarly within their knowledge. If married, they could have easily have shown that fact, and at once have put an end to the proceeding. They were themselves competent witnesses. To call upon the state to prove a negative of this character would virtually repeal the statute. Parties might come to this state from other states or foreign countries, or indeed from distant counties in this state. The state could not possibly prove in many cases that the parties had at no time and in no place ever been married. This construction would license con-

---

[1] Cf. United States v Kauffman, 14 USCMA 283, 34 CMR 63; 1 Wharton, Criminal Evidence, 12th ed, § 14, pages 38 to 42; Wigmore, Evidence, 3d ed, § 2486.

cubinage. On the other hand, it is no hardship on the defendants when so charged with a scandalous offense to prove that they live in honorable wedlock. A similar rule, and for the same reason, prevails in indictments for retailing without license. If the retailing is shown, the burden is on the defendant to show that he has license so to do. State v Morrison, 3 Dev 299; State v Emery, 98 NC 668, 3 SE Rep 636; State v Sorrell, 98 NC 738, 4 SE Rep 630.

" 'The state need not prove that the defendants are unmarried. It will be presumed such is the case till defendants offer proof to the contrary.' 8 Amer & Eng Enc Law, 563; Bish St Crimes, § 693. Two other reasons are also to be given for this rule as to this offense. 'The single state is the natural, and during early life the only possible, one; nor is there any period at which it is necessarily terminated or merged in marriage. In the absence, therefore, of testimony tending to the contrary, the presumption is that the celibacy which exists in youth continues. Therefore, until drawn in question, no affirmative testimony on this point was required from the prosecution.' Gaunt v State, 50 NJ Law, 491, 14 Atl Rep 600, (1888); People v Colton, 2 Utah, 457. And again, while the burden is on the state to prove the *res gestae* of the offense, marriage or non-marriage is no part thereof. It is a *status* which exists prior to such acts, and independently of them. The single state, existing first, in the absence of evidence is presumed to continue, and, if it has been changed to the marriage state between the defendants, it is a matter peculiarly within their knowledge, and there is no good reason to call on the state to prove a negative. In civil cases, the party who claims property or legitimacy under and by virtue of a marriage is called upon to prove it. The objection is urged that the adoption of the same rule in criminal cases would enable grand juries to indict any married couple in the state. This is to presume that grand juries and solicitors are cor-

rupt or actuated by malice. In practice it will be found, as has been the experience in regard to retailing without license, that those who are dealing legitimately have no motive for concealment, and grand juries and solicitors will respect the limitations of their duty. Indictments will not be found except in those cases in which an investigation is demanded by the surrounding circumstances, and in those very rare cases in which it will be found that the indicted parties were in fact married, it is better that they should show their *status* as married people, a fact which is best known to themselves, than that justice should fail in numberless cases by the state being burdened, not with proving the *res gestae* of the offense, but with tracing the previous lives of the parties to show non-marriage, which would often be utterly impracticable. The experience of the lower courts is that the marriage of the defendants is in fact never relied on, but the defense is that the parties do not cohabit, the burden of proving which lies upon the state."

This was the view taken in a similar situation, also involving a charge of wrongful cohabitation, by an Air Force board of review in United States v Andrews, 9 CMR 667 (1953), petition for grant of review denied, 3 USCMA 815, 11 CMR 248 (1953), and, apparently, the basis for the instruction in this case. However, the appellant submits that *Andrews* is not a correct statement of the law. Appellant concedes that the instruction does not fall within that class of cases where the court was or may have been misled by the instruction to believe it was accused's duty to establish the contrary of the allegation in some particular beyond a reasonable doubt or to the court's satisfaction; that it did not require as a condition to permitting the initial inference of guilt that the accused fail to prove anything to the court; that it imposed no duty on accused to explain in order to prevent the inference; and "that the burden of proof may be raised from the government *within the limits of reason and fairness.*" It is the appellant's

409

contention that the question before this Court is "whether the permissive presumption raising the burden of proof from the government was reasonable and fair."

We join with the appellant in rejecting any concept that cohabitation of the parties, standing alone, ▪ offers any basis for an inference of non-marriage. Rather such facts would, in the normal course of human experience, be indicative of the validity of this relationship.

In the case at bar the Government's evidence consisted in part of the following documentary proof:

(1) An application for dependents allowance (NAVPERS 668) executed by the accused on August 26, 1958, listing his wife as Lovie M. Smith, Indianola, Mississippi.

(2) Navy records of emergency data, all executed by the accused:

(a) DD Form 93–1, dated September 2, 1960, listing his wife as Lovie Machelle (Short) Smith, Indianola, Mississippi.

(b) DD Form 93–1, dated March 13, 1961, listing his wife as Lovie Machelle (Short) Smith, Memphis, Tennessee.

(c) NAVPERS 601–2, dated August 1, 1962, listing his wife as Mary Margaret (Taylor) Smith, Naples, Italy.

(3) Certified copy of a marriage certificate in the names of Nathaniel Smith, Jr., and Lovie Mae Short, reflecting their marriage at Indianola, Mississippi, on May 26, 1955.

(4) Statement of accused dated September 11, 1962, in which he acknowledged his marriage to Lovie Mae Short, that they have never been divorced, that he lived with Mary Margaret Taylor during the period alleged, and that he and Miss Taylor have never been married.

It was to all the evidence on this charge, including the above, that the law officer obviously re- ▪ ferred in his instruction when he told the court, "in order for you to consider the evidence

and have the question of guilt or innocence submitted to you." In this state of the record we find the inference raising the burden of proof from the Government to be reasonable and fair.

It might be argued that it is not clear the law officer was referring to *all of the evidence* when he gave the complained-of instruction. In that connection we can only iterate our previous statements that the law officer's instructions should be carefully tailored to the facts of each case. United States v Smith, 13 USCMA 471, 33 CMR 3, and cases cited. However, reading the instruction in context with the others on the requirements of proof, we are satisfied there is no reasonable risk that it was misconstrued by the court-martial as anything but advice on the permissible inference that could be drawn from the facts presented and that the court fully understood it could accept or reject the inference. See United States v Miller, 8 USCMA 33, 23 CMR 257.

In light of the above, we find no error in the law officer's instructions on wrongful cohabitation.

Turning now to the issue of the legal sufficiency of the evidence on the charge of presenting a false claim, we find that the accused was charged in pertinent part as follows:

"In that SMITH, Nathaniel, yeoman third class, U. S. Navy, . . . did, . . . on or about 22 June 1962, . . . present for approval a claim against the United States, in the amount of $1.50 per day for the day of 22 June 1962 and each day thereafter that his wife was in residence overseas at or near the Service Squadron SIX home port of Naples, Italy, which claim was false and fraudulent in the amount of $1.50 in that the lawful wife of said SMITH was not in residence in or near Naples, Italy and was then known by the said SMITH to be false and fraudulent."

As is evident, the alleged falsity in the above specification is "that the lawful wife of said SMITH was not in

residence in or near Naples, Italy" during the pertinent period.

Most of the Government's proof on this issue is detailed above; that is, the marriage certificate, those Navy records which reflect Lovie Mae Smith (nee Short) as the lawful wife of the accused; and his pretrial statement confirming this fact. As indicated therein, her residence is reflected as Indianola, Mississippi, on May 26, 1955, August 26, 1958, and September 2, 1960. She was in Memphis, Tennessee, on March 13, 1961, and was still there in April 1962, when accused last heard from her. He has written her twice since that time but has received no response. On June 4, 1962, the accused advised the Navy Finance Center to forward his wife's allotment check to her new address, c/o Nathaniel Smith, General Delivery, Navy No. 510, FPO, New York, New York, "Because . . . [he] was somewhat financially restricted." As a result of his request, accused "received . . . [his] wife's allotment check for the month of June 1962 and endorsed it by signing . . . [his] name and cashing it at the NAVSUPPACT NAPLES Disbursing Office." "The reason I cashed this check was because I was getting behind in some of my bills and I wanted to bring them up to date."

All of the above evidence allows a justifiable inference that the lawful wife of the accused was ■ *not* in or near Naples, Italy, on or about June 22, 1962. However, on the plus side for the accused is the fact that the above-mentioned allotment check, dated June 30, 1962, was endorsed not only by the accused but with the name of the purported payee "Lovie M. Smith," and was cashed in Naples, Italy. Since there is no claim of forgery, it might affirmatively appear that the accused's wife was in Naples, Italy, at least at the time the check was cashed.

Is this, then, sufficient to overcome the Goverment's evidence on this issue? We think not.

We hasten to point out that insofar as this charge is concerned there appears to be general agreement that

Lovie M. Smith is the lawful wife of the accused. At least no one alleges it was Mary Margaret Taylor, who, admittedly, was in Naples, Italy, on June 22, 1962. But was the lawful wife there also? Accused doesn't know for he admitted in his pretrial statement in September that he had last heard from her from Memphis, Tennessee, the previous April. The check in question was received by him and cashed in July and the proceeds used by the accused to satisfy some personal bills. It is logical to assume that between the time of the receipt and cashing of this check, this item was in the personal custody or control of the accused. It is difficult to believe that under such circumstances his wife could have signed the check without his knowledge. If, however, by some incomprehensible feat she in fact did find and sign the check, the question arises as to why she would have left for his personal use so valuable an item which rightfully belonged to her, without at least making her presence known and discussing the matter with her husband. It is true that they are husband and wife but love had cooled and they had on various occasions discussed divorce.

Even assuming, for the sake of argument, that the signature on the instant check is genuine, the Government having averred negatively and having established a *prima facie* case in regard thereto, the burden is upon the accused to repel what has been proved with excuse or explanation. Morrison v California, 291 US 82, 78 L ed 665, 54 S Ct 281. The fact that the Government did not charge the accused with forgery is not persuasive.

Granted the speed of present-day modes of transportation, the residence of the accused's wife in Memphis, Tennessee, as late as April 1962 having been established by competent evidence, an inference arises as to the continuance of this residence until the contrary is shown. Crapo v United States, 100 F2d 996 (CA 10th Cir) (1939); 22A CJS, Criminal Law, § 588, page 351, and cases cited therein. While inferences arising in criminal prosecutions are generally in favor of an accused and ordinarily there can be no inference

of a fact essential to his conviction, such a rule cannot be invoked to destroy the force of legitimate and obvious inferences. Husten v United States, 95 F2d 168 (CA 8th Cir) (1938).

". . . A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates." [Manley.v Georgia, 279 US 1, 6, 73 L ed 575, 578, 49 S Ct 215 (1929).]

In the state of this record, we find the evidence supporting the charge of presenting a false claim to be legally sufficient.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.