UNITED STATES, Appellee

v

ARCHIE B. COOK, Recruit (E–1), United States
Army, Appellant

12 USCMA 173, 30 CMR 173

No. 14,247

Decided February 10, 1961

*First Lieutenant Vernon C. Maulson* argued the cause for Appellant,
Accused. With him on the brief was *Major Ralph W. Wofford.*

*First Lieutenant Jerome Nelson* argued the cause for Appellee, United
States. With him on the brief were *Lieutenant Colonel James G. Mc-
Conaughy* and *First Lieutenant Edward J. Lee.*

GEORGE W. LATIMER, Judge:

Accused, an individual prone to violence, became incensed when restrained from antisocial conduct and responded with gunfire. As a result, one man was killed and a guard was wounded, and for his senseless criminal actions, accused was brought to trial before a general court-martial. He pleaded not guilty to, but was convicted of, unpremeditated murder and assault with intent to commit murder, in violation of Articles 118 and 134, Uniform Code of Military Justice, 10 USC §§ 918 and 934, respectively. The court returned a sentence of dishonorable discharge, total forfeitures, and confinement at hard labor for the term of accused's natural life. The findings and sentence were approved by the convening authority, and a board of review in the office of The Judge Advocate General of the Army affirmed. Thereafter, accused sought review by this Court, and we granted his petition limited to a single question dealing with the law officer's instructions.

The issue before us does not necessitate a detailed recitation of all the facts concerning the commission of the crimes involved in this tragedy. While the evidence of accused's guilt is overwhelming, the following brief narration should suffice to place the question in its proper perspective.

The record shows that at Fort Gordon, Georgia, on the evening of July 29, 1959, accused and a companion—one Williams—attended a dance on post. After the dance, the two accosted some cleaning women working in the area. A soldier on guard—Kenney—and a civilian named Sims — the murder victim — attempted to prevail upon the pair to stop molesting the women and go on their way. At this time, only the four men were present, and they were standing in close proximity to each other near a barracks. The accused informed the guard in vulgar language that he could do nothing about it with his empty rifle, drew a pistol and, without reason or excuse, commenced shooting at him. As the second or third shot was fired at him, the guard, who had been wounded, dropped his rifle, turned and ran, but accused fired at least one more round at his back as he fled. Williams also departed from the scene as accused started to shoot at the guard. As Kenney made good his escape, he heard yet another shot and, turning, saw accused, who had moved from his original position and had his arm raised as if firing in another direction. That is apparently the shot that proved fatal to Sims. The accused testified as a witness in his own behalf and, although his recollection of most of the events was poor, he admitted talking to the women and that thereafter he shot at a man who was in a crouched position and "seemed to be going under . . . [a] barracks."

In light of those facts, appellate defense counsel contend that when accused fired the fatal shot, the only person endangered thereby was the murder victim, for Williams had departed and the guard involved in the other specification had already fled from the immediate scene in the opposite direction to the line of fire and was some distance away. Hence they argue that Article 118(3) of the Uniform Code is not applicable and that the facts of the case would permit only a finding of unpremeditated murder under Article 118(2) of the Code. In that background, the defense challenges the propriety of the law officer's charge on murder. His instructions on that offense included the following advice:

"The Specification of Charge I and Charge I charges the accused with unpremeditated murder, in violation of Article 118, which provides in part that any person subject to the Code who, without justification or excuse, unlawfully kills a human being, when he intends to kill or inflict great bodily harm, is guilty of this offense.

"The court is advised that to find the accused guilty of this specification and charge, it must be satisfied

by legal and competent evidence beyond a reasonable doubt:

"First, that the Eugene Sims referred to in the specification is dead;

"Second, that his death was caused, without justification or excuse, by an unlawful act of the accused, to wit, by shooting him with a .22 caliber pistol;

"Three, that, at the time of the killing, the accused intended to kill him or to inflict great bodily harm upon him.

"Unlike the capital offense of premeditated murder where, first, the thought of taking life must be consciously conceived; second, a specific intent or fixed purpose to kill must be deliberately formed and considered; and, third, the act by which the killing is accomplished must be intended. Unpremeditated murder requires no premeditation and the intent may be either an intent to kill or an intent to inflict great bodily harm.

"All that is incumbent upon the prosecution to prove beyond a reasonable doubt with respect to the accused's intent, to justify a conviction of unpremeditated murder in this case, is, that at the time of the alleged offense, the accused harbored a general criminal intent to kill or inflict serious bodily harm upon the victim. A general criminal intent is that frame of mind that accompanies the deliberate conscious and intentional doing of an act, the natural and probable consequences of which must be apparent to any reasonable person performing the act. It may be inferred from the doing of the act itself, in the light of all attending circumstances, that the natural and probable consequences of the act were also intended so long as the actor performed that act intentionally. A person who intentionally and wrongfully shoots a pistol, capable of inflicting serious bodily harm or death, at another person may be held criminally responsible for the death of or serious bodily harm to that other person that results from his act of shooting. *In such case, his intent or frame of mind is inferrable from the wantonness of his act.* This conclusion may properly be reached beyond a reasonable doubt by the triers of the facts, where unpremeditated murder is charged, even though the evidence in the case is insufficient, to their minds, to support a finding beyond a reasonable doubt that the actor actually entertained a fixed purpose or specific intent to kill. To justify a conviction of murder as charged, therefore, the court must be convinced beyond a reasonable doubt either that the accused actually specifically intended to kill or seriously harm the victim and deliberately shot at him; or that the required general criminal intent is present for the reason that he fired the weapon intentionally under circumstances where it would probably kill or injure the victim seriously, *with a disregard of these natural and probable consequences of his act.*" [Emphasis supplied.]

Appellate defense counsel assert that the emphasized phrases of the above-quoted portions of the instructions injected an improper theory into the case and erroneously permitted the court to ground its finding of unpremeditated murder under Article 118 (3) of the Code. And the defense also argues that the law officer so ran together, intertwined, and garbled the proper definitions of intent under subsections (1), (2), and (3) of Article 118, that the court-martial was confused as to the requisite elements for a finding of guilty.

These contentions may be given short shrift. There can be no question, when the entire ■ charge is considered in context, that the court members were instructed only with regard to murder under Article 118(2) by one who intends to kill or inflict great bodily harm. The term "wantonness," as used by the law officer, did not inject the theory of Article 118(3) into his instructions. As the board of review stated, in its opinion:

". . . The word 'wantonness' may correctly describe an intentional act directed at a particular individual to imply, actively, a willingness to injure and a disregard for its consequences. It is not limited to the characterization of a heedless act which shows a passive disregard of human life and the rights of others in general such as is contemplated by Article 118(3). Cf., Black's *Law Dictionary*, 3d Ed., p 1829. Therefore, we interpret the above-quoted portion of the law officer's instructions as advising the court that the accused's intent to kill or inflict great bodily harm may be inferrable from the accused's merciless or inhumane act of shooting the victim under the circumstances disclosed by the evidence. A law officer properly may instruct that if a person does an intentional act likely to result in death or great bodily harm it may be inferred that he intended death or great bodily harm. *United States* v *Miller*, 8 USCMA ·33, 23 CMR 257; *United States* v *Kentucky*, 8 USCMA 553, 25 CMR 57; *United States* v *Jones*, 10 USCMA 122, 27 CMR 196."

As to the argument that the instructions confuse the requisite intent for unpremeditated murder ▬▬▬▬■ under Article 118(2), it is true that the law officer's charge was indeed verbose. However, when taken by their four corners, the instructions adequately informed the court of the elements of the offense and all possible lesser included offenses. Certainly, any possible lack of clarity due to reference to specific intent redounded to accused's benefit rather than his detriment, for unpremeditated murder requires only a general criminal intent.

Appellate defense counsel further attack, the law officer's charge on the offense of assault with intent to commit murder. With regard to the element that the accused must have intended to murder, he instructed the court-martial that:

"In order to find an intent to commit murder the court must be satisfied beyond a reasonable doubt that the accused actually entertained a specific intent to kill George E. Kenney, Jr., an intent to inflict serious bodily harm being insufficient. All of the other elements of murder not premeditated must be found to be intended by the accused."

The defense relies on its prior contention that the law officer had previously garbled his instructions ▬▬▬▬ ■ concerning specific intent and general intent. Therefore, the argument continues, "[s]ince the court-martial would necessarily have to consider the specific intent to kill within the general framework of the instructions already given, the court could have been no clearer with regard to the necessary intent involved in assault with intent to commit murder than it was in murder not premeditated."

The answer to this last contention by the defense is necessarily provided by our previous discussion.

Accordingly, the assignment of error must be decided adversely to the accused. And we point out that we are reinforced in our conclusion by the actions of the defense at trial. After both parties had rested the law officer held an out-of-court session in order to apprise counsel of his proposed advice, and at that time defense counsel indicated his satisfaction with the instructions. Further, after the law officer had given his charge to the court members in open session, the defense twice assured him that it had no objections to his advice and desired no additional instructions. Certainly it is a bit difficult to sustain the position that the charge was confusing when at trial the defense, in three separate instances, indicated its satisfaction with the instructions and failed to request any clarification.

The decision of the board of review is affirmed.

Chief· Judge QUINN and Judge FERGUSON concur.