## UNITED STATES, Appellee

v

## WILLIE D. THOMAS, Sergeant, U. S. Army, Appellant

### 17 USCMA 103, 37 CMR 367

No. 19,847

June 23, 1967

 

*Captain Kenneth J. Stuart* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel T. Ghent.*

*Captain Maurice Jay Kutner* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski* and *Lieutenant Colonel David Rarick.*

## Opinion of the Court

QUINN, Chief Judge:

An eyewitness saw Mrs. Johanna Kuelbel shot down on a street in Hoechst, Germany. An autopsy revealed three bullet wounds in her body. One bullet entered the rear of the skull and, in the opinion of the pathologist who performed the autopsy, was "the cause of death"; a second pierced the right cheek, and the third missile was "within the area of the chest." Other evidence indicated that a robbery had probably occurred at the business establishment at which Mrs. Kuelbel was employed, and was still in progress at the time and place of the shooting. Investigation led to the accused, and in due course he was charged with premeditated murder, "felony" murder, and robbery, in violation of Articles 118 and 122, Uniform Code of Military Justice, 10 USC §§ 918 and 922, respectively.

The accused was convicted as charged, and sentenced to confinement at hard labor for life, dishonorable discharge, and accessory penalties.[1] Intermediate appellate authorities affirmed the findings of guilty and the sentence. In this Court, the accused contends he was prejudiced by certain instructions as to the merits.

As set out in the first assignment of error, the accused alleges he was prejudiced by an instruction "seemingly requiring logical consistency" in the verdict.[2] The argument is a

---

[1] The law officer instructed the court members that premeditated murder and murder committed in the course of a robbery (specifications 1 and 2, Charge I, respectively), "though charged separately and separately considered by you upon the findings, constitute only one offense." See United States v Davis, 2 USCMA 505, 509, 10 CMR 3.

[2] The instruction reads as follows: "If you determine beyond a reasonable doubt that the accused is guilty of an offense lesser to and included within Specification 1 and Specification 2 of Charge I, you may

curious one. From the premise that consistency in a verdict is not necessary (see United States v Doctor, 7 USCMA 126, 21 CMR 252), the accused contends that an instruction elucidating the alternative findings of fact indicated by the evidence is improper because it may coerce the court members into reaching particular findings merely "for the sake of logical consistency." The contention misconceives the purpose of instructions.

Instructions must provide the court members with a clear statement of the law applicable to the ■■■■■■ case and the precise issues of fact to be decided by them. The more orderly and logical the instructions, the more the likelihood the court members will understand the principles of law and the questions of fact. The rule rejecting the necessity for consistency in the findings is not an instructional requirement; its purpose is to sustain findings of guilty supported by evidence in the record of trial as to one charge which appear, on the surface, to be impugned by acquittal on another charge. Such surface inconsistency between the two is not ground for invalidating the conviction. As the Supreme Court has observed, the acquittal may be " 'no more than . . . [the jurors'] assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " Dunn v United States, 284 US 390, 393, 76 L ed 356, 52 S Ct 189 (1932); see also United States v Lyon, 15 USCMA 307, 313, 35 CMR 279.

Determination of the accused's guilt or innocence is a question for the fact finders. United Brotherhood v United States, 330 US 395, 408, 91 L ed 973, 67 S Ct 775 (1947). But they must act on the basis of the evidence. See United States v Lyon, supra. Necessarily, the accused is not entitled to an instruction that the court-martial can acquit him out of sympathy or leniency. It is, therefore, entirely appropriate for the law officer to instruct the court-martial "that if it convicts on one charge, it should acquit on another which is negatived by the findings on the first." United States v Littlepage, 10 USCMA 245, 247, 27 CMR 319; see also United States v

---

return a finding of guilty of such an offense under either specification of Charge I, or both. I will point out to you, however, the logical inconsistency which would be apparent should the court, under the circumstances of this case, find the accused not guilty of premeditated murder, in Specification 1 of Charge I, and not guilty of murder while perpetrating robbery, in Specification 2 of Charge I, and yet return findings of guilt of different lesser offenses as to each of the two specifications, and, if the court should find the accused guilty of premeditated murder, in Specification 1 of Charge I, it would likewise be logically inconsistent to return a finding of guilt of an offense lesser than murder while perpetrating robbery, within Specification 2 of Charge I. Though this is not meant to direct you to a finding of guilty of Specification 2 of Charge I in such event. Logic would as well be served by a finding of not guilty of that offense. There would, however, be no inconsistency should the court determine guilt of the accused of both premeditated murder, in Specification 1, and murder while perpetrating robbery, in Specification 2, nor would there be such an inconsistency if the court should return with findings of guilt of murder while perpetrating robbery, in Specification 2, and guilt of a lesser offense within Specification 1, for, as I have explained, the reason the law considers killing while perpetrating robbery to be murder is different from the reason that the law may consider any other killing you may here consider an unlawful homicide.

.　.　.　.　.

"The findings which you shall make, and the determination of the facts in this case, is solely and completely the province of this court. Further, if I have seemed to indicate, during the course of these instructions, any opinion as to the guilt or innocence of the accused, the court will disregard it. My opinion, if any, is totally irrelevant to your determinations and shall be given no weight whatsoever."

Lyon, supra, page 312. This is the import of the challenged instruction. Moreover, the court members were specifically advised that nothing in the instruction should be construed as a direction "to make any particular findings." All the instructions on the elements of the offenses presented correct principles of law, and correctly defined the specific issues of fact to be determined by the court members. We discern no possibility that the challenged instruction constrained any court member to predicate his vote solely on the basis of "logical consistency." Cf. United States v Jones, 14 USCMA 177, 33 CMR 389.

Although no objection was made at trial, it is now contended that an instruction dealing with the lesser offense of unpremeditated murder was prejudicial. The instruction in question was given by the law officer after he had explained the respective elements of premeditated and unpremeditated murder. It is as follows:

"The intent to kill or to inflict great bodily harm required in unpremeditated murder need not exist for any particular time before the commission of the act or have previously existed at all. It is sufficient if it existed at the time of the act. The intent in unpremeditated murder to kill or inflict great bodily harm is not a specific intent, but a general criminal intent. Thus, unpremeditated murder differs from premeditated murder in that premeditated murder requires both a specific intent to kill and premeditation, whereas unpremeditated murder requires no premeditation, and the intent may be either an intent to kill or an intent to inflict great bodily harm."

Appellate defense counsel maintain that the law officer's description of the intent element in unpremeditated murder as "a general criminal intent" is erroneous and prejudicial because this aspect of the offense involves a specific intent to kill. They invite us to reexamine and repudiate statements in earlier opinions to the effect that "unpremeditated murder requires only a

general criminal intent." United States v Cook, 12 USCMA 173, 176, 30 CMR 173. Further, relying upon certain comments in the concurring opinion in United States v Moore, 16 USCMA 375, 379, 36 CMR 531, they urge us to hold that a "specific intent to kill or to inflict grievous bodily harm" is a requisite element of unpremeditated murder.

Article 118 defines four kinds of murder, as follows:

"Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he—

(1) has a premeditated design to kill;

(2) intends to kill or inflict great bodily harm;

(3) is engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life; or

(4) is engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson;

is guilty of murder, and shall suffer such punishment as a court-martial may direct, except that if found guilty under clause (1) or (4), he shall suffer death or imprisonment for life as a court-martial may direct."

The language and legislative background of the Uniform Code indicate Congress did not intend to change the substantive characteristics of the constituent offenses from what they had been earlier in military law. United States v Craig, 2 USCMA 650, 653, 10 CMR 148. However, separate statutory delineation of the previously undifferentiated aspects of unpremeditated murder was an "innovation," as Judge Brosman noted in United States v Stokes, 6 USCMA 65, 68, 19 CMR 191; and to that extent, as Judge Latimer observed in his concurring opinion, Article 118 broke "with the past." *Id.*, page 73.

We have never attempted to explore all ramifications of the innovations of

Article 118; and no useful purpose will be served by such inquiry at this time. It can, however, be said that we adopted, as applicable to the separate types of murder defined in Article 118, the cluster of judicial interpretation that adhered to each type under predecessor statutes. See United States v Davis, 2 USCMA 505, 10 CMR 3. The description of unpremeditated murder as an offense involving only a general criminal intent has its origin in this policy of recourse to past precedent. In United States v Roman, 1 USCMA 244, 2 CMR 150, we were required to decide whether, under the Articles of War, a homicide committed without justification, excuse, or mitigation, that is, heat of passion caused by adequate provocation, could be reduced to manslaughter because the accused was intoxicated. Although we acknowledged the existence of a body of State law indicating the reductive effect of intoxication, we determined that Federal precedents, especially in the District of Columbia where the statutes paralleled the language of military law, were to the effect that, standing alone, evidence of intoxication would not reduce an act of unpremeditated murder to manslaughter. In the course of our opinion, we undertook to distinguish premeditated murder and unpremeditated murder in terms of their respective intents. We described the intent of the former as a specific intent and that of the latter as a general criminal intent. The description is a convenient basis for discussion. See 1 Bishop, A Treatise on Criminal Law, 9th ed, §§ 401, 409. We used it in a number of later opinions by this Court. United States v Craig, supra; United States v Cook, supra; United States v Judkins, 14 USCMA 452, 34 CMR 232. However, unpremeditated murder may be committed by an accused possessed of a specific intent to kill a particular individual. See Hansborough v United States, 308 F2d 645 (CA DC Cir) (1962). It is apparent, therefore, that our simplistic generalization does not mean that unpremeditated murder may always be established without regard to the particular state of mind

of the accused at the time of the act. Cf. United States v Hartley, 16 USCMA 249, 36 CMR 405. In fact, under the Uniform Code, the existence *vel non* of a specified state of mind on the accused's part will determine the legal nature of the homicide committed by him. Code, supra, Articles 118 and 119.

Classification labels may simplify professional discussion, but they are not substitutes for statutory requirements. We have not, and indeed we could not, in view of the language of Article 118, sanction an instruction which would allow the court-martial to predicate a verdict of unpremeditated murder upon a finding merely that the accused unlawfully caused the victim's death, without considering whether he entertained an "intent to kill or inflict great bodily harm," or acted under the other circumstances proscribed in Article 118. See United States v Cates, 9 USCMA 480, 26 CMR 260; Manual for Courts-Martial, United States, 1951, paragraph 197, **"Proof,"** page 353; United States v Houghton, 13 USCMA 3, 32 CMR 3. Regardless of the label by which it is described, the accused's exact state of mind may be a matter for instruction. United States v Hartley, supra. A particular label may, of course, be misunderstood by lay jurors. See Mann v United States, 319 F2d 404 (CA5th Cir) (1963). However, whether the intent required by Article 118(2) is general or specific, we discern no risk that the description used by the law officer misled the court-martial as to its obligation to find the accused possessed an intent to kill or inflict great bodily harm.

The law officer enumerated the elements of unpremeditated murder. He advised the court members they must find "that at the time of the killing, the accused intended to kill or to inflict great bodily harm." Nothing in his instructions allowed the court to return a finding of guilty on the basis of an intention less than an intent to kill or inflict great bodily harm. Whether that intent be described as general or specific, it was the precise

intent required by Article 118. It is, therefore, unreasonable to suppose the court members concluded from the difference in classification that they could find the accused guilty of unpremeditated murder on the basis of an intent less than, or different from, that required by law.

In any event, assuming we take too narrow a view of the matter, there is no fair possibility that the ■ accused was prejudiced by the description. By its verdict, the court-martial determined that he, in fact, possessed the intent to kill required for premeditated murder, rather than the kind of intent required for the lesser offense of unpremeditated murder. See United States v Ransom, 4 USCMA 195, 15 CMR 195. As to the sentence, it was immaterial whether the accused was found guilty of premeditated or unpremeditated murder. His conviction for committing an unlawful homicide while perpetrating a robbery required a sentence to death or imprisonment for life. Code, supra, Article 118. Since the lesser punishment was imposed, no prejudice can arise by reason of any difference in the findings of guilty as to the other offenses. See United States v Wimberley, 16 USCMA 3, 13, 36 CMR 159.

The decision of the board of review is affirmed.

FERGUSON, Judge (concurring):

I concur.

As I read the principal opinion, it espouses the view that unpremeditated murder, in violation of Uniform Code of Military Justice, Article 118 (2), 10 USC § 918, requires the specific intent to kill or inflict grievous bodily harm, in order to sustain a conviction. With that conclusion, I unreservedly agree, for it is consistent with our previous holdings regarding the law of homicide and is the state of mind which necessarily distinguishes murder from manslaughter in military law.

Thus, in United States v Moore, 12 USCMA 696, 31 CMR 282, we expressly refused to accept the instructional

principle that, if death resulted from the natural and probable consequences of an intentional act, the court members "must infer as a matter of law that he [the accused] intended the infliction of death or grievous bodily harm." United States v Moore, supra, at page 702. Such an inference of intent, we stated, was permissive only. United States v Ball, 8 USCMA 25, 23 CMR 249; United States v Miller, 8 USCMA 33, 23 CMR 257. In like manner, we pointed out, in United States v Taylor, 16 USCMA 489, 37 CMR 109, that accused's denial of any intent to kill or inflict grievous bodily harm was, where he concededly caused the death of his victim, sufficient to place involuntary manslaughter in issue. So also in United States v Moore, 16 USCMA 375, 36 CMR 531, we likewise adverted to the need of establishing an actual intent to kill or inflict grievous bodily harm in order to support a conviction of unpremeditated murder rather than involuntary manslaughter. And it is worthy of note that Judge Kilday, concurring in that case, expressly pointed out, at page 379:

". . . To find him guilty of that offense [unpremeditated murder] it was requisite that the court-martial find, beyond a reasonable doubt, that at the time he fired his rifle *appellant entertained the specific intent to kill or to inflict grievous bodily harm.*" [Emphasis supplied.]

The contrary doctrine, *i.e.,* that only a general intent is required in unpremeditated murder, seems to have grown out of interpretation of some of our early cases dealing with intoxication as a defense to homicide. See United States v Roman, 1 USCMA 244, 2 CMR 150, and United States v Craig, 2 USCMA 650, 10 CMR 148. From the Court's refusal to accept such as a defense to murder in those cases, the theory has been advanced over the years that, if an accused intentionally does an act, the natural and probable consequences of which are death or grievous bodily harm, it must follow that he intended to cause death or grievous bodily harm—apparently on the basis that one is presumed to in-

tend the natural and probable consequences of his deliberate behavior. But, as we have noted, this syllogistic reasoning is a measure of evidence sufficiency, not a yardstick by which the fact finders are to return a verdict. United States v Ball, supra; United States v Moore, 12 USCMA, supra.

As the Chief Judge states, Congress has provided that the intent to kill or inflict grievous bodily harm is a necessary predicate for conviction of unpremeditated murder and "We have not, and indeed we could not, in view of the language of Article 118," sanction any instruction which would permit a verdict of guilty to be based on a lesser foundation. Though a man may do an act which will naturally and probably result in serious injury or death, he may subjectively intend far less serious consequences. For the crime to be murder, however, Congress has said *he* must intend death or grievous harm to result. For that state of mind, we cannot properly substitute a requirement only that he intend the act which ultimately resulted in tragedy. The sufficiency of evidence on which the court may predicate a finding of intent should not be confused with the need to inform the members that the intent must be found as an indispensable prerequisite of guilt of unpremeditated murder in violation of Code, supra, Article 118(2).

Thus, I am in agreement with the Chief Judge that the law officer here erred in denominating to the court-martial an element of unpremeditated murder as a "general" intent. I am equally certain that lack of prejudice from this error may not be found from the balance of the instructions regarding an otherwise uncharacterized intent to kill or inflict grievous bodily harm. Be that as it may, he was not found guilty of unpremeditated murder. The court-martial was carefully and clearly instructed on specific intent and premeditation as elements of premeditated murder, findings of guilty of which it ultimately returned. By such verdict, it necessarily found accused not only specifically intended to kill but that he acted with a premeditated design. In addition, the accused was also, for the same slaying, properly convicted of felony murder, which likewise required a punishment of either life imprisonment or death.

Under these circumstances, therefore, there was no fair risk of harm to him from the instructional error and I join in the affirmance of the board of review's decision.

KILDAY, Judge (concurring):

I concur in the principal opinion by Chief Judge Quinn. I also agree with the observations of Judge Ferguson in his concurring opinion. To constitute premeditated murder, the intent to kill must exist just as unpremeditated murder requires either an intent to kill or to inflict grievous bodily harm. The briefs in this case seem to evidence that, in some quarters at least, the terms "specific intent" and "general intent," in homicide cases, are recognized as words of art, whereas, some of the former opinions of this Court using those terms have actually dealt in semantics. Confusion may arise from the fact that this Court, and other courts, have not been willing to permit voluntary intoxication to mitigate a homicide below some degree or form of murder.

It appears as if in my language in United States v Moore, 16 USCMA 375, 36 CMR 531, I either inadvertently or carelessly used the words "specific intent to kill or to inflict grievous bodily harm" as if applying the words of art. Apparently, had I used the language, "the appellant entertained the *intent specifically to kill* or to inflict grievous bodily injury," confusion would have been avoided. If this be true, semantics only was involved. Clearly, murder under Article 118(1) or Article 118(2) cannot exist unless there be an intent to kill under the former, and either an intent to kill or inflict grievous bodily harm under the latter.