UNITED STATES, Appellant

v

DONALD R. VAUGHN, Sergeant, U. S. Air Force, Appellee

No. 28,348

March 14, 1975

*Lieutenant Colonel Abraham A. Dash* argued the cause for Appellant, United States. With him on the brief were *Colonel C. F. Bennett* and *Captain Fred W. Kuhn.*

*Captain Philip F. O'Neill* argued the cause for Appellee, Accused. With him on the brief was *Colonel William E. Cordingly.*

### OPINION OF THE COURT

FERGUSON, Senior Judge:

Tried by general court-martial, the accused stands convicted of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918, and sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for 24 years, and reduction. The United States Air Force Court of Military Review set aside his conviction and sentence and ordered a rehearing because the military judge in-structed the court improperly on the doctrine of partial mental responsibility. The correctness of that decision has been certified here by the Judge Advocate General of the Air Force.

The facts are not in dispute. Suffice it to say that the accused brutally slew his victim by clubbing him with an ash stand and stabbing him in the chest. His defense at the trial was based on his mental condition at the time of the of-fense. Two psychiatrists testified for the defense that the accused was then un-

able to distinguish right from wrong or to adhere to the right. A third testified that the accused might have had the capacity to perceive the difference between right and wrong but was unable to adhere to the right. All agreed that he was totally deprived of the ability either to premeditate or to form the intent to kill. Three psychiatrists testified for the Government to the opposite effect.

On the issue thus joined, the military judge gave full instructions on the need to find the accused mentally responsible in a general sense before he could be convicted of any crime. Thereafter, he advised the court that even though the accused met the classic tests for general mental responsibility, he might nevertheless, because of his mental condition, be incapable of entertaining a premeditated design to kill. Unless it was satisfied that he possessed such capacity, the judge further instructed the court that it must acquit him of the charge of premeditated murder but, if it found the other elements of the offense proven, it might convict him of unpremeditated murder.

The instruction, then, effectively informed the court-martial that the accused's alleged lack of capacity to entertain a specific intent to kill or to inflict grievous bodily harm, *i.e.,* the doctrine of partial mental responsibility, was not a defense to unpremeditated murder. The Court of Military Review considered this to be error and reversed; hence, the certified question before us.

The doctrine of partial mental responsibility in this Court originated in its decisions in *United States v Kunak,* 5 USCMA 346, 17 CMR 346 (1954), *United States v Edwards,* 4 USCMA 299, 15 CMR 299 (1954), and *United States v Higgins,* 4 USCMA 143, 15 CMR 143 (1954).[1] Recognizing that advances in modern psychiatry have enabled an accused's mental condition to be more accurately diagnosed and that the degree of one's guilt should take into consideration his capacity to entertain the intent or knowledge required to prove the crime charged, those cases concluded that mental incapacity to entertain a premeditated design to kill, a requisite specific intent or knowledge, or any particularized state of mind should be a defense to a charged offense requiring such a state of mind.

At the time this doctrine was developed and for many years thereafter, the offense of unpremeditated murder was said to involve no particularized intent, but only a general state of mind. *United States v Cook,* 12 USCMA 173, 30 CMR 173 (1961); *United States v Stokes,* 6 USCMA 65, 19 CMR 191 (1955); *United States v Kunak, supra; United States v Roman,* 1 USCMA 244, 2 CMR 150 (1952). Thus, the accused's lack of mental capacity to entertain a specific design to kill was held only to reduce murder in degree from premeditated murder to unpremeditated murder and this despite the fact that the relevant statute defines the latter offense as requiring that the accused "intends to kill or inflict great bodily harm."[2]

The matter was thoroughly reviewed in *United States v Thomas,* 17 USCMA 103, 37 CMR 367 (1967). Decrying the oversimplifications involved in labeling intents as "general" or "specific," Judge Quinn declared for the Court:[3]

[T]he existence *vel non* of a specified state of mind on the accused's part will determine the legal nature of the homicide committed by him. . . .

Classification labels may simplify professional discussion, but they are not substitutes for statutory requirements. We have not, and indeed we could not, in view of the language of Article 118, sanction an instruction which would allow the court-martial to predicate a verdict of unpremeditated murder upon a finding merely that the accused lawfully caused the victim's death, without considering whether he entertained an "intent to kill or inflict great bodily harm," or acted under the other circumstances proscribed in Ar-

---

[1] *See also* United States v Dunnahoe, 6 USCMA 745, 21 CMR 67 (1956); United States v Carver, 6 USCMA 258, 19 CMR 384 (1955).

[2] Article 118(2), UCMJ, 10 USC § 918(2).

[3] United States v Thomas, 17 USCMA at 107, 37 CMR at 371.

ticle 118. See *United States v Cates,* 9 USCMA 480, 26 CMR 260; Manual for Courts-Martial, United States, 1951, paragraph 197, *"Proof,"* page 353; *United States v Houghton,* 13 USCMA 3, 32 CMR 3.

The concurring opinions of the other Judges agreed with Judge Quinn that unpremeditated murder required that the accused's deadly act be accompanied by an intent to kill or inflict grievous bodily harm and that no other state of mind would suffice to make out the offense. See the concurring opinions of Judge Ferguson, 17 USCMA at 108, 37 CMR at 372, and of Judge Kilday, 17 USCMA at 109, 37 CMR at 373.

Thereafter, in *United States v Mathis,* 17 USCMA 205, 209, 38 CMR 3, 7 (1967), Judge Kilday, for the Court, characterized as "patently erroneous" an instruction that characterized unpremeditated murder as a " 'general criminal intent offense' " to which " 'partial mental impairment is not a defense.' " In *United States v Ferguson,* 17 USCMA 441, 443, 38 CMR 239, 241 (1968), we reiterated that "the particular state of mind specified by Article 118 must be found beyond a reasonable doubt to support a conviction for unpremeditated murder."[4]

█ The foregoing decisions establish that this Court clearly interprets the provisions of Article 118(2) to require an intent to kill or inflict grievous bodily harm and that no lesser or other state of mind will do. Indeed, as was said in *United States v Thomas, supra,* we cannot do away with the express requirement of the statute and substitute some generalized mental process for that specifically and unequivocally set out by Congress. Absent, therefore, the subjective intent of the accused to kill or seriously harm his victim, the homicide he commits cannot be unpremeditated murder.

Basically, the Government does not premise its major argument on disagreement with the foregoing concept. Rather, it reviews the historical background of the law of homicide and contends that, regardless of labels as to the intent re-quired, the doctrine of partial mental responsibility should not be applied to murder other than to reduce it in degree from premeditated to unpremeditated. Principally, it relies on our holdings in *United States v Dunnahoe, supra,* and *United States v Kunak, supra,* that the principle only affects the element of premeditation. But, as developed above, the decisions in those cases were based on the classification of the intent in unpremeditated murder as something less than the special state of mind we found necessary in *United States v Chappell, supra, United States v Ferguson, supra,* and *United States v Thomas, supra.* When a crime requires a subjective state of mind on the part of an accused, surely the court should be made to consider his mental capacity to possess such a state of mind.

True, in *United States v Ferguson, supra,* we held that the accused's intoxication could affect only his ability to premeditate murder and would not reduce the degree of his crime below that of unpremeditated murder. But this, we stated, was fictive and "military law is 'committed to this legal fiction,' which 'accords happily with the common law.' "[5] Moreover, intoxication is a voluntary act on the part of an accused and it would be strange indeed to permit him to escape the consequences of his deadly and malicious act because he had himself created the situation by which it is argued that he lost the capacity to intend.

█ On the other hand, mental disorders are involuntary. Rather than being the result of the accused's actions, they are usually the causative factor. Their origin and treatment is not wholly understood by the medical profession. Vast differences of opinion exist among psychiatrists even as to their existence.. Those who suffer from them are the objects of our pity and concern. It would ill-behoove us, therefore, to say on the one hand that the accused is guilty of unpremeditated murder only if he possesses a particular intent and, at the same time, to deny him the opportunity to have the factfinders consider that, for

---

[4] *See also United States v Chappell,* 19 USCMA 236, 41 CMR 236 (1970).

[5] *United States v Ferguson,* 17 USCMA at 443, 38 CMR at 241.

reasons quite beyond his control, he was mentally incapable of forming that intent. We conclude that the doctrine of partial mental responsibility applies to the crime of unpremeditated murder and that, as found by the Court of Military Review, the military judge's instruction to the contrary was prejudicially erroneous.

■ Left for consideration is the question of the lesser degree of homicide to which the defense of partial mental responsibility will, if accepted by the factfinders, reduce the accused's offense. The Court of Military Review, concentrating on the idea of intent to kill as being inherent in voluntary manslaughter, opined that the defense, if found to exist, would permit the accused's conviction of no greater degree than that of involuntary manslaughter. In our opinion, that view is correct.

Voluntary manslaughter presupposes the existence of an actual intent to kill or inflict great bodily harm. *United States v Bartholomew,* 1 USCMA 307, 3 CMR 41 (1952). It is not the absence of an intent to kill but attribution of the homicide to the frailty of human nature that reduces it from murder to voluntary manslaughter. Clark & Marshall, A Treatise of the Law of Crimes 695 (7th ed. 1967). In the famous words of Chief Justice Shaw:[6]

The true nature of manslaughter is, that it is homicide mitigated out of tenderness of the frailty of human nature. Every man, when assailed with violence of great rudeness, is inspired with a sudden impulse of anger, which puts him upon resistance before time for cool reflection; and if, during that period, he attacks his assailant with a weapon likely to endanger life, and death ensues, it is regarded as done through heat of blood or violence of anger, and not through malice, or that cold-blooded desire for revenge which more properly constitutes the feeling, emotion, or passion of malice.

■ Thus, voluntary manslaughter in the law of homicide is no less an intentional crime than murder. Indeed, the sudden heat of blood in which the fatal blow is struck presupposes that it was done intentionally for the purpose of causing either death or serious harm to the victim. While that heat of blood induced by adequate provocation may serve to reduce the degree of an accused's culpability, the need for the requisite intent remains, and there is no basis in either law or logic to treat the offense differently from murder insofar as the accused's mental capacity to harbor that intent is concerned. We accordingly conclude that, as in the case of unpremeditated murder, the doctrine of partial mental responsibility, if established, is a defense to voluntary manslaughter.

On the basis of the foregoing, we answer the certified question in the affirmative. The decision of the United States Air Force Court of Military Review is affirmed.

Judge COOK concurs.

Judge QUINN did not participate in the decision of this case.

---

[6] Commonwealth v Webster, 5 Cush (Mass) 295, 307–8, 52 Am Dec 711, 720 (1850).