**UNITED STATES, Appellee,**

v.

**Private First Class Kevin W. NICHOLS,
281–80–6435, United States Army,
Appellant.**

**ACMR 9102390.**

U.S. Army Court of Military Review.

28 Dec. 1993.

For Appellant: Captain Silas R. DeRoma, JAGC, (argued), Major James M. Heaton, JAGC, Captain Michael E. Smith, JAGC (on brief).

For Appellee: Captain Louis E. Peraertz, JAGC, (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

OPINION OF THE COURT

GRAVELLE, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer members of unpremeditated murder of his six-month-old son and of false swearing, in violation of Articles 118 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 934 (1988). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for thirty-five years, forfeiture of

all pay and allowances, and reduction to Private E1.

The appellant assigns numerous errors, only three of which require discussion: (1) that the evidence is insufficient to prove unpremeditated murder; (2) that the military judge erred in failing to suppress an allegedly coerced confession; and, (3) that the military judge erred by conducting an en masse preliminary hearing at which he advised numerous accused of their counsel rights and forum options. In addition, the appellant asserts numerous errors pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

## I. Facts

In the early morning hours of 16 May 1991, the military police responded to an emergency call at the appellant's apartment because the appellant's six-month-old son, Matthew, was not breathing. The military police immediately administered cardiopulmonary resuscitation (CPR) until emergency medical personnel arrived. The military police all testified that they saw obvious bruises on the child's body, and quickly suspected that the child had been abused. Because the appellant was the only adult in the apartment, they suspected him of the abuse. The military police made arrangements for someone to care for the appellant's stepchildren and then transported the appellant to the military police station. After the child was pronounced dead, agents of the Criminal Investigation Command (CID) advised the appellant of his rights, which the appellant waived. The appellant made a written statement denying striking the child or abusing him in any way, saying the bruises may have resulted from the child falling in the bathtub earlier that day. Two days later, two CID agents reinterviewed the appellant, using a "good guy—bad guy" questioning technique. At that time, the appellant admitted striking the child. He then executed a sworn statement in which he admitted becoming frustrated with his son's crying. He related:

> I don't know why I did it and I can't believe I did it but for some reason I hit Matthew. He was laying on his back on the bed. I was kneeling on the bed myself with only my feet hanging off the end of the bed. I had Matthews feet pretty much between my knees with his head in front of me. He wouldn't stop crying. While on my knees on the bed, with most of my weight forward on my knees, for some reason I just reached back with my right hand and swung at Matthew. I swung at him with an open hand but I struck him very hard on the left side of his head. I specifically recall swing [sic] and hitting him very hard at least two times. I could have hit him more but I don't specifically recall hitting him any more than two times.... Then I set Matthew on my right knee and bounced him on my right leg. I bounced him pretty hard on my leg but he still would not stop crying.... He stopped crying and seemed like he wanted to go back to sleep so I picked him up and was putting him back in his crib when he just went limp and stopped breat[h]ing.

Prosecution Exhibit 39.

The government presented a forensic pathologist who testified that the autopsy revealed evidence of at least one past episode, one to three weeks prior, in which the child's rib and clavicle were broken. He opined that the past and present damage to the child's body fit the pattern of "battered child syndrome." The pathologist described the injuries to the head, chest, shoulder, arm, and right buttocks sustained by the child just prior to his death. The child had a fresh fracture of the collar bone. A number of the bruises to the child's trunk were "fingertip bruises" caused by extreme pressure probably resulting from squeezing the child. Injuries to the child's face and chin were probably caused by blows from an open hand or closed fist. The pathologist opined that the infant had been struck in the face and head at least eleven times, some with lethal force. The blows caused subdural hematoma, pressure on the brain, loss of consciousness, and eventual death.

The main defense strategy was to dispute the intent of the appellant. The appellant argued that he acted out of frustration without forming an intent to kill or cause grievous bodily harm. The defense pre-

sented the stipulated testimony of an expert in the dynamics of child abuse who opined that:

> [A] majority of parents who abuse their children do not intend to harm the child. Rather, they strike out in frustration and anger without thinking about the logical consequences of their actions. A common example of this illogical action is a parent striking a child and yelling, "Stop crying!" In many cases, there is little difference between fatal child abuse and non-fatal child abuse. Frequently in fatal cases, parents generally do not intend to cause serious injury to their child even in some cases of significant violence.

Defense Exhibit C.

The defense expert witness also reviewed the "considerable environmental stress" that the appellant was under due to the fact that his wife was in the hospital, thus, leaving him alone to care for four young children for eight days.

The appellant also presented neighbors and friends who described the appellant's loving attitude toward his son. The appellant did not testify. He did present the testimony of his wife explaining the preexisting injuries to the child. She testified that, several months before, the child fell from a table at a bowling alley. In rebuttal, the government's expert disputed that a fall from a table could have caused the older injuries.

## II. Sufficiency of the Evidence of Murder

■ The appellant asserts that the evidence is insufficient to show that the appellant intended to kill or inflict grievous bodily harm to his infant son. As he did at trial, the appellant argues that he is only guilty of involuntary manslaughter. We disagree.

Unpremeditated murder requires proof of four elements:

(1) [t]hat a certain named or described person is dead;

(2) [t]hat the death resulted from the act or omission of the accused;

(3) [t]hat the killing was unlawful; and,

(4) [t]hat, at the time of the killing, the accused had the intent to kill or inflict great bodily harm upon a person.

Manual for Courts–Martial, United States, 1984, Part IV, para. 43b(2) [hereinafter MCM, 1984, Part IV, para. 43b(2)] (Citations omitted). Killing a human being is unlawful when done without justification or excuse. Whether an unlawful killing constitutes murder or a lesser offense depends upon the circumstances. *Id.*, Part IV, para. 43(c). *See also United States v. Moore*, 12 U.S.C.M.A. 696, 31 C.M.R. 282, 287 (1962).

> An unlawful killing without premeditation is also murder when the accused had either an intent to kill or inflict great bodily harm. It may be inferred that a person intends the natural and probable consequences of an act purposely done. Hence, if a person does an intentional act likely to result in death or great bodily injury, it may be inferred that death or great bodily injury was intended.

MCM, 1984, Part IV, para 43(c)(3). This inference is permissive only. *Moore*, 31 C.M.R. at 288; *United States v. Thomas*, 17 U.S.C.M.A. 103, 37 C.M.R. 367, 372 (1967) (Ferguson, J., concurring).

We find the evidence legally sufficient under the standards set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We find that there is sufficient evidence of record from which a reasonable fact-finder viewing the evidence in the light most favorable to the government could conclude that the appellant had intended to kill or cause great bodily injury. However, we have an additional responsibility under Article 66(c), UCMJ, to be personally convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

We accept the pathologist's testimony that the infant died after being struck with as many as eleven blows to the head. The number and severity of the blows leads us to conclude that the appellant formed the intent to kill or inflict great bodily harm. We hold that the evidence is factually sufficient to support the appellant's conviction for unpremeditated murder.

## III. Voluntariness of the Appellant's Statement

The appellant asserts, as he did at trial, that his statement to CID was the product

of psychological coercion and was therefore inadmissible. We disagree.

After hearing evidence on the issue, the military judge made extensive findings of fact and conclusions of law. We find his findings of fact accurate and his conclusions of law correct. We hold that the military judge did not err in refusing to suppress the appellant's statements to CID.

## IV. Other Issues

■ The appellant next asserts that the military judge erred by conducting an en masse proceeding to explain counsel and forum rights to the appellant and six other accused soldiers. We have considered this issue in two previous cases before this court, and in those cases have found no error prejudicial to the accused soldiers, but have condemned in two unpublished opinions the use of en masse proceedings. *United States v. Guest,* ACMR 9101861 (A.C.M.R. 24 Dec. 1992) (unpub.); *United States v. Vincent,* ACMR 9101831 (A.C.M.R. 11 Mar. 1992) (unpub.). After a review of the record, we find no prejudice to the appellant in this case. Therefore, no relief is warranted.

We have reviewed the remaining assertions of error, including those personally raised by the appellant pursuant to *Grostefon,* 12 M.J. at 431, and find them to be without merit.[1] We have carefully considered the appellant's argument as to sentence appropriateness, and after reviewing the entire record, specifically find the sentence to be appropriate.

The findings of guilty and the sentence are affirmed.

Judge JOHNSTON and Judge BAKER concur.

---

[1]. We specifically find that the appellant has not met his burden of showing that his trial defense counsel were ineffective, under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See United States v. Crum,* 38 M.J. 663 (A.C.M.R. 30 Nov. 1993).